MARÍA MARCHESE VIVÓ, demandante y recurrida, *v.* CARMEN ANA MARCHESE VIVÓ Y OTROS, demandados y recurrentes.

Número 12099.

*Sometido:* 29 de febrero de 1960.  *Resuelto:* 10 de mayo de 1960.

*Enrique Báez García* y *Héctor Reichard,* abogados de varios de los recurrentes; *Antonio J. Amadeo,* abogado de una de las recurrentes; *José Veray, Jr.,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Doña María Vivó Vilella falleció en estado de viudez en la ciudad de San Juan, Puerto Rico, allá para el año 1952 bajo testamento abierto otorgado el mismo año ante el Notario Gustavo Zeno Sama. En dicho testamento instituyó como únicos y universales herederos por partes iguales a sus siete hijos legítimos nombrados Carmen Ana, Celia, Pablo Rafael, Sara Ramona, Lydia, Rosa Luisa y María Marchese y Vivó y a su nieta menor de edad María del Pilar González Marchese, hija única de su premuerta hija Laura Marchese Vivó; no describió sus bienes por ser éstos conocidos de sus hijos; legó el tercio de libre disposición a su hija María Marchese Vivó; dispuso que se solicitase el nombramiento de un tutor para la administración de los bienes que pudieran corresponderle a su nieta María del Pilar González Marchese; designó y nombró albaceas mancomunados a su

yerno don Rafael Pont Flores y a su hija María Marchese Vivó, facultándolos para administrar todos los bienes de la herencia hasta que se hiciera la partición de los mismos y con relevación de fianza, pudiendo pagar las deudas y cobrar los créditos que hubiere; nombró contador partidor de sus bienes a su referido yerno don Rafael Pont Flores.

Los albaceas testamentarios aceptaron su cargo y en 17 de febrero de 1953 la Sala de Arecibo del Tribunal Superior les expidió cartas testamentarias, las cuales constituían prueba de su autoridad como albaceas de la finada doña María Vivó Vilella.

La heredera Lydia Marchese Vivó falleció abintestato el día 1ro. de julio de 1953 dejando tres hijos legítimos nombrados Antonio Enrique, Madeline y Héctor Alberto Sécola Marchese, quienes se encuentran bajo la patria potestad de su señor padre don Antonio Sécola.

En 25 de noviembre de 1953 don Rafael Pont Flores renunció el cargo de albacea, continuando doña María Marchese y Vivó, como única albacea y administradora de los bienes dejados por la causante.

En 26 de abril de 1954 la heredera y albacea doña María Marchese Vivó radicó una demanda en la Sala de Aguadilla del Tribunal Superior, sobre División de Comunidad de Bienes, contra los demás coherederos. En dicha demanda alegó el hecho de la muerte de su señora madre doña María Vivó Vilella, el del otorgamiento del testamento mencionando las cláusulas que ya hemos relacionado anteriormente y expuso que la testadora había dejado bienes muebles e inmuebles y derechos sujetos a partición entre los cuales figuran los que describe en dicha demanda. Alegó además que se había satisfecho la contribución de herencia y que no existían deudas contra el caudal hereditario; que la demandante no deseaba continuar más en la comunidad y que los demandados se han opuesto a la división de la herencia. La demanda termina con la súplica de que se ordene a los demandados procedan a dividir la herencia de acuerdo con el testamento,

dejado por la causante, con imposición de costas, gastos y honorarios de abogados a los demandados.

La demandada Sara Ramona Marchese Vivó compareció por escrito allanándose a la demanda. La codemandada Rosa Luisa Marchese Vivó no compareció y se le anotó la rebeldía. La menor María del Pilar González Marchese, representada por su padre don Ramón González Navas compareció contestando la demanda. Admitió algunos hechos y negó otros y como reconvención y contrademanda alegó que existían otros bienes no relacionados en la demanda; que la demandante no había rendido la cuenta final de su administración como albacea de la herencia dejada por doña María Vivó Vilella y que el contador partidor había renunciado su cargo según se desprendía de la demanda. Terminó su reconvención con la súplica de que se declarara sin lugar la demanda y con lugar la reconvención y que en su consecuencia se ordene el nombramiento de un contador partidor a quien debía de entregarse todos los bienes de la herencia para que éste procediera a su partición de acuerdo con el testamento otorgado por la causante; que la demandante entregase una relación jurada de todos los bienes que constituían la herencia, así como la cuenta final de su administración como albacea.

Los herederos Carmen Ana, Celia y Pablo R. Marchese y los menores Antonio Enrique, Madeline y Héctor A. Sécola Marchese, representados estos últimos tres por su padre con patria potestad don Antonio Sécola radicaron contestación separada. Alegaron que la demanda no aducía hechos constitutivos de una causa de acción; negaron que los bienes relacionados en la demanda sean todos los bienes dejados por la causante y alegaron en contrario que existían otros bienes, créditos y valores no relacionados en la demanda y finalmente alegaron que el testamento otorgado por la causante era nulo.

Después de algunos trámites preliminares se celebró un juicio en los méritos, recibiéndose prueba documental y tes-

tifical ofrecida por la demandante. Los demandados no presentaron prueba sino que sometieron el caso a base de las cuestiones de hecho y de derecho planteadas en la contestación. Luego de formular conclusiones de hecho y de derecho el tribunal a quo dictó sentencia declarando con lugar la demanda y ordenando a los demandados que procedieran a la división de los bienes hereditarios descritos en una de las conclusiones de hecho, dentro de un plazo de 30 días a partir de la notificación de la sentencia, disponiendo además que si no se ponían de acuerdo dentro de dicho plazo comparecieran en el término de 15 días a proponer candidatos para el nombramiento de un contador partidor que divida la herencia, y por último condenó a los demandados que habían contestado la demanda a pagar la suma de $1,000 en concepto de honorarios de abogado.

██ ██ El tribunal a quo fundamenta su sentencia en que de acuerdo con el art. 1005 del Código Civil (31 L.P.R.A. sec. 2871) (¹) ningún coheredero está obligado a permanecer en la indivisión de la herencia; que de acuerdo con el art. 1012 de dicho Código (31 L.P.R.A. sec. 2878) (²) cuando los herederos mayores de edad no se entendieren sobre el modo de hacer la partición, quedará a salvo su derecho para que lo ejerciten en la forma prevenida en los preceptos sobre procedimientos legales especiales y que lo que procede en

---

(¹) La sec. 2871 (art. 1005 del Código Civil) dispone:

"§2871. Cuándo se permitirá la partición

"Ningún coheredero podrá. ser obligado a permanecer en indivisión de la herencia, a menos que el testador prohiba expresamente la división. Esta prohibición no alcanzará a los bienes que constituyen la legítima de los herederos.

"En todo caso, la división tendrá siempre lugar mediante alguna de las causas por las cuales se extingue la sociedad."

(²) Dicha sección dispone:

"§2878. Procedimientos legales si los herederos no se ponen de acuerdo

"Cuando los herederos mayores de edad no se entendieren sobre el modo de hacer la partición, quedará a salvo su derecho para que lo ejerciten en la forma prevenida en los preceptos sobre procedimientos legales especiales."

en este caso, de acuerdo con dichos preceptos, es el nombramiento de un contador partidor, por ser los bienes divisibles.

Los preceptos de los citados arts. 1005 y 1012 del Código Civil (ed. 1930) no ofrecen duda alguna. En lo que no podemos convenir con el tribunal sentenciador es que lo único que proceda en este caso es el nombramiento de un contador partidor para que divida los bienes hereditarios. ¿Cuáles son esos bienes? En la demanda se mencionan muchos de ellos pero no todos. En sus conclusiones de hecho el tribunal sentenciador, declara que entre los bienes sujetos a partición figuran los descritos en la demanda. La propia demandante declaró que existen otros bienes de la herencia que no se mencionan en la demanda. Tampoco los mencionó el tribunal a quo en sus conclusiones de hecho. Los muchos inconvenientes en este caso para resolver favorablemente las pretensiones de la demandante surgen como consecuencia de no haber cumplido ella con los deberes que la ley le impone como albacea testamentaria. Ella tomó posesión de los bienes hereditarios pero nunca formalizó inventario de dichos bienes, con la intervención de todos los herederos, en la forma prescrita en los arts. 568, 569 y 570 de la Ley de Procedimientos Legales Especiales. (32 L.P.R.A. secs. 2401, 2402 y 2403.) Ha administrado dichos bienes a espaldas de los demás coherederos, recibiendo rentas, pagando deudas y cancelando y recibiendo el importe de un crédito hipotecario, sin haber presentado en el Tribunal Superior las cuentas trimestrales ni la cuenta final de su albaceazgo en la forma dispuesta por los arts. 587 y 588 del Código de Enj. Civil (32 L.P.R.A. secs. 2511 y 2512). La necesidad de la rendición de estas cuentas para que los demás herederos pudieran examinarlas, resalta de los propios hechos de este caso según los relató la demandante. Por ejemplo, ella declaró que pagó las contribuciones sobre ingresos de la sucesión como si ésta fuera una corporación. Al preguntársele por qué se había considerado a la sucesión como una corporación contestó que eso lo había decidido el Departamento de

Hacienda y que ella no había consultado a ningún abogado sobre esa cuestión. De suerte que del récord surge la probabilidad de que los herederos hayan pagado contribuciones en exceso sin haber tenido la oportunidad de defenderse contra la imposición y cobro de esa contribución, debido a su desconocimiento absoluto de los actos de administración ejecutados por la albacea. Lo mismo ocurre con los honorarios pagados por la albacea a un abogado. La cuantía de dichos honorarios los fijó el propio abogado. También aparece del récord que algunos deudores hipotecarios de la sucesión no han pagado los intereses correspondientes sobre los dineros que recibieron de la causante en calidad de préstamo. La propia demandante adeuda a la sucesión la suma de $16,000. Cuando se le preguntó si ella pagaba intereses sobre dicha cantidad, guardó silencio. El récord no explica las razones por las cuales esas personas no pagan intereses sobre las sumas adeudadas a la sucesión.

Por otra parte, ¿cómo determinó el tribunal sentenciador que el caudal hereditario no tenía deudas? Pues con el solo testimonio de la demandante quien declaró que ella sabía que no había deudas porque ella era quien administraba el caudal hereditario. La teoría de la demandante era que esta prueba distinguía el caso de autos del de *Ruiz* v. *Ruiz*, 74 D.P.R. 347, donde dijimos a la pág. 351 que "aun asumiendo que, de promoverse alguna cuestión entre las partes, dando lugar a un caso contencioso, sea procedente la acción ordinaria de división de una comunidad (*Rivera* v. *Corte*, supra) en esa acción deben quedar salvaguardados y protegidos los derechos e intereses del erario público y de los posibles acreedores del caudal hereditario". Precisamente por esa razón es que el albacea debe seguir el procedimiento que indica la ley para el pago de las deudas del caudal hereditario. El art. 353 del Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 2541) le impone al albacea o administrador el deber de satisfacer las *deudas legítimas* del finado, y el art. 594 del mismo código (32 L.P.R.A. sec. 2542) dispone que para ello

publicará en periódico designado por el juez del Tribunal Superior un aviso a los acreedores para que le presenten sus reclamaciones con los correspondientes comprobantes bajo juramento, en el lugar señalado en el aviso. La albacea en este caso no siguió ese procedimiento, y no vemos cómo pueda considerarse probada la inexistencia de deudas del caudal hereditario cuando del récord no aparece que la albacea haya hecho gestión alguna encaminada a ese fin.

▮ Los hechos expuestos demuestran que al ejercitar la demandante la acción de división de comunidad que autoriza los arts. 326 a 340 del Código Civil [31 L.P.R.A. secs. 1271 a 1285] ha privado a los demás coherederos de los derechos que les conceden la ley tales como el de intervenir en la formación del inventario de los bienes hereditarios, fiscalizar los actos de administración mediante el examen de las cuentas trimestrales e intervención en su aprobación por el tribunal, oponiéndose al pago de deudas de la propiedad que no sean legítimos, intervención en la determinación de las deudas del caudal hereditario, etc. Por otro lado, acudiendo a la acción de división de comunidad, como se ha hecho aquí, la albacea consigue eludir el cumplimiento de los deberes que como tal le impone la ley y lo que es peor aún, logra que los herederos con exclusión de ella, paguen los servicios de su abogado, cuando de acuerdo con la ley, los gastos comunes deben deducirse de la herencia. Art. 1017 Código Civil [31 L.P.R.A. sec. 2883], *Cf. Mercado v. Mercado*, 66 D.P.R. 38.

▮▮ En verdad, tanto las alegaciones de la demanda como la prueba no determinan la acción de *"communi dividundo"* sino la de división de herencia (*familia escircundæ*). *López v. López*, 14 D.P.R. 655; *Lassús et al. v. Ducret et al.*, 26 D.P.R. 390. Aunque ambas acciones son esencialmente iguales en tanto en cuanto su objeto es poner fin a una comunidad, sin embargo una y otra se rigen por reglas distintas. Para la división de la herencia el legislador ha fijado reglas claras, precisas y completas en la Ley de Pro-

cedimientos Legales Especiales. Estas reglas obedecen a consideraciones de orden práctico y no técnico en la división y distribución de la herencia. Como dijo este Tribunal en *Trinidad et al.* v. *Sucn. Trinidad et al.*, 19 D.P.R. 647, 655, donde también se ejercitó impropiamente la acción *"comuni dividundo"* "[L] a naturaleza misma de la herencia demuestra, pues, la necesidad de disposiciones especiales que la regulen, y cuando existen esas disposiciones especiales, deben cumplirse y no eludirse como trataron los demandantes de eludirlas en el presente pleito."

El tribunal sentenciador debió desestimar la demanda en este caso y remitir a los litigantes al juicio de testamentaría. *En su consecuencia se revoca la sentencia del Tribunal Superior y en su lugar se dictará otra desestimando la demanda y condenando a la demandante al pago de las costas y la suma de $600 para honorarios de abogado de los demandados-recurrentes.*

Los Jueces Presidente Sr. Negrón Fernández y Asociado Sr. Hernández Matos no intervinieron.