JUAN PASSALACQUA PALMIERI, demandante y recurrido, *v.* SUCN. DE ANTONIO PASSALACQUA, ETC., ET AL., demandados y recurrentes; JUAN PASSALACQUA PALMIERI, demandante y recurrido, *v.* LUIS PASSALACQUA PALMIERI, ETC., demandados y recurrente el primero.

*Números:* 415, 416   *Resueltos:* 4 de marzo de 1963

588

*J. Pedro Miranda*, abogado del recurrente Luis Passalacqua Palmieri; *Jorge L. Córdova, Carlos Cebollero, Jorge L. Córdova, Jr.*, abogados de los recurrentes Sucn. de Antonio Passalacqua, etc., et al.; *Santiago Polanco Abreu*, abogado del recurrido.

Sala integrada por el Juez Asociado Señor Blanco Lugo como Presidente Accidental de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El origen de la comunidad de bienes cuya división se interesa mediante la presente acción se remonta al 19 de julio de 1882, fecha del fallecimiento de don Luis Passalacqua Costa. Hasta el 17 de abril de 1915 la administración del caudal común correspondió a don Antonio Passalacqua Costa, quien en la fecha indicada rindió cuentas de sus gestiones, resultando que el capital neto de los hermanos, de apellidos Passalacqua Palmieri, Juan—el recurrido—, Luis y Antonio, hoy su sucesión—los recurrentes—, ascendía a

la suma de $48,379.77.(¹)   Durante estos años los interesados habían hecho retiros por las siguientes cantidades: Juan, $7,458.77; Antonio, $4,431.26; y Luis, $13,691.91.(²) Al correr de los años, de estos bienes sólo permanecen en el patrimonio de la comunidad la estancia denominada Dolores, un condominio de tres quintas partes en dos edificaciones sitas en la calle José I. Quintón, de la población de Coamo, y un panteón.

---

(¹) El valor en los libros de este capital se determinó en la siguiente forma:

*Fincas Rústicas:*

| | | |
|---|---|---|
| Estancia Soto | $1,300.00 | |
| Estancia Manuel Colón | 500.00 | |
| Estancia Dolores | 2,000.00 | |
| Estancia Jácana | 14,575.88 | $18,375.88 |

*Edificaciones:*

| | | |
|---|---|---|
| ⅗ partes casa de madera y zinc | $3,300.00 | |
| ⅗ partes almacén mampostería | 2,100.00 | $5,400.00 |

*Cuentas por cobrar:*

| | | |
|---|---|---|
| Antonio Passalacqua Costa | $4,168.06 | |
| María Torres | 391.14 | |
| Donato Rivera | 97.00 | |
| Tomás Lara | 5.75 | $4,661.95 |

*Otros:*

| | | |
|---|---|---|
| 1 Panteón | $360.00 | |
| Acciones Central Vanina | 1,000.00 | $1,360.00 |

*Retiro de los Herederos:*

| | | |
|---|---|---|
| Luis Passalacqua Palmieri | $13,691.91 | |
| Antonio Passalacqua Palmieri | 4,431.26 | |
| Juan Passalacqua Palmieri | 7,458.77 | $25,581.94 |
| | | $55,379.77 |

*Menos:*

| | |
|---|---|
| Préstamo Hipotecario gravando finca Jácana a favor del Banco Crédito y Ahorro Ponceño | $7,000.00 |
| Total: | $48,379.77 |

(²) Estos anticipos se figuraban en los balances anuales como cuentas a cobrar y nunca se hicieron los correspondientes ajustes a la cuenta de capital.

Con motivo del fallecimiento de doña Julia Palmieri, madre de los hermanos Passalacqua Palmieri, y de las operaciones de partición del caudal hereditario relicto a su fallecimiento según aparece de la escritura Núm. 21 de 17 de abril de 1915 otorgada ante el Notario don Manuel Tous Soto, la comunidad existente entre los hermanos se acrecentó por la adjudicación a ellos de bienes por valor de $27,000, (³) de los cuales sólo restan en la actualidad las

(³) La relación de bienes adjudicados y la valoración figurada a los fines de la partición es la siguiente:

*Fincas Rústicas*

| *Identificación en Escritura de Partición* | *Finca* | *Valor* | |
|---|---|---|---|
| Núm.   10 | Estancia Juan María (Meléndez) | $3,000.00 | |
| Núm.   11 | Estancia Emajagua | 2,000.00 | |
| Núm.   12 | Estancia Vicente Ortiz | 1,000.00 | |
| Núm.   13 | Estancia Alfaro | 2,000.00 | |
| Núms. 14) 15( 16) | Estancia Guerrero | 600.00 | |
| Núm.   17 | Estancia Perchas | 3,400.00 | |
| Núm.   18 | Estancia Nicolás Colón | 100.00 | |
| Núms. 19–25 | Estancia Monchito | 2,000.00 | |
| Núm.   26 | Estancia Vázquez | 2,000.00 | |
| Núm.   33 | Estancia Suárez | 533.60 | |
| Núms. 35–36 | Estancia Ortiz Robles | 921.23 | |
| Núm.   37 | Estancia Elías | 384.24 | |
| Núm.   31 | Estancia Atajo (condominio de una mitad en nuda propiedad) | 1,228.63 | |
| Núm.   27 | Estancia Madrid | 2,000.00 | $21,167.70 |

*Edificaciones*

| | | |
|---|---|---|
| 1 casita terrera | $150.00 | |
| 1 cochera | 75.00 | |
| 1 pesebre | 25.00 | |
| 1 ranchón | 50.00 | |
| 1 casa Pedro García | 200.00 | |
| Participación casa herencia materna | 521.60 | 1,021.60 |

*Otros*

| | | |
|---|---|---|
| Acciones de la Central Vanina | 1,500.00 | |
| Acciones Luz Eléctrica Ponce | .50 | |
| Cuentas por Cobrar | 2,782.50 | |
| Otros Bienes | 527.70 | $4,810.70 |
| Herencia Materna al 17 de abril de 1915: | | $27,000.00 |

estancias llamadas Emajagua y Guerrero. (⁴)

Resulta, pues, que desde el 17 de abril de 1915 hasta la fecha en que se incoó la acción, se dispuso de los siguientes bienes del capital común: quince fincas rústicas, seis edificaciones, $7,444.45 en cuentas a cobrar, acciones estimadas en $2,500.50, y otros bienes valorados en $527.70. De todas las transacciones que han tenido lugar sólo tenemos conocimiento de la disposición de las estancias Juan María o Meléndez y Perchas, vendidas al comunero don Antonio Passalacqua Palmieri en 15 de junio de 1917 y 21 de enero de 1924, por precios de $7,508 y $3,400, respectivamente (Exh. 13, Demandante); la estancia Madrid, vendida a don Antonio Serracante mediante documento privado de fecha 11 de mayo de 1926, por precio que luego de efectuada una rectificación de cabida ascendió a $6,225.00 (Exh. 22, Demandante); y la estancia Jácana, vendida a fines del año 1946, por un precio neto aproximado de $34,500 (⁵) (Exhibits 16 y 39, Demandante).

Hasta el año 1930, la administración de los bienes comunes estuvo a cargo de don Antonio Passalacqua Costa, a quien

(⁴) Del exhibit 25 de la parte demandante, que es copia certificada de la escritura Núm. 192 otorgada ante el Notario don Fernando Zapater Martínez en 19 de julio de 1940, aparece que el condominio que les fuera adjudicado en la liquidación de la herencia materna en la nuda propiedad de la finca Atajo, y que luego se consolidó en dominio al fallecimiento en 1920 del usufructuario don Aquilino Torres Colón, fue dividido entre los tres hermanos, habiéndose hecho las segregaciones correspondientes e inscrito en el Registro de la Propiedad como fincas separadas e independientes a nombre de cada uno de los condóminos. Se alude a la escritura de división de comunidad "número setenta y cuatro de fecha cuatro de abril ante mí," sin indicar el año del otorgamiento.

(⁵) En el testimonio presentado por el demandante Juan Passalacqua Palmieri hay una referencia a la venta de la finca Vázquez a don Darío Santiago. Esta transacción fue efectuada por el administrador don Antonio Passalacqua Costa, por precio de $2,500. Recibió como parte del precio una casa en el pueblo de Coamo, valorada en $1,500, que luego fue adquirida por don Antonio Passalacqua Palmieri. Manifestó el deponente que no ha recibido su participación de $500 en este inmueble (T.E. III, págs. 28–29).

Aparece además que en 30 de marzo de 1924 y 9 de abril de 1926 se vendieron acciones de la Central Vanina por $1,366.66 y $720, o sea, un total de $2,086.66 (Exh. 43, Demandante).

ayudaba en estos menesteres el recurrido don Juan. Se ofreció la versión de que las cuentas que corresponden a este período de 1915 a 1930 no están disponibles debido a que los libros que contenían los asientos fueron destruidos por los herederos de dicho administrador después del fallecimiento de éste, "por ser inservibles." A partir del año 1930 el demandante recurrido realizó algunas gestiones de administración.

En marzo de 1959 don Juan Passalacqua Palmieri acudió ante el Tribunal Superior, Sala de San Juan, mediante demanda dirigida contra su hermano Luis y los herederos de su hermano premuerto Antonio, que denominó "acción civil" en solicitud para que se ordenara la disolución de la comunidad de bienes y el reintegro al demandante de ciertas sumas que fueron determinadas conforme a una serie de cálculos y operaciones detallados en un documento que se le anexó a la demanda. Este documento fue preparado por un contador a base de la información que le suministró el propio demandante. Posteriormente, después de comenzado el juicio, las alegaciones de la demanda referentes al reintegro de cantidades fueron enmendadas para conformarlas a un nuevo anexo preparado *ad hoc* por otro contador que para ello consideró el testimonio prestado y los 44 exhibits identificados durante la toma de la deposición del demandante, y que además contiene la interpretación personal de este contador sobre el alcance de actuaciones de las partes. Inexplicablemente, el tribunal de instancia adoptó íntegramente el contenido de este informe, a pesar de las enormes lagunas y errores palmarios que surgen de su propia faz, y dictó sentencia a favor de la parte demandante accediendo a todas sus pretensiones. La singular sentencia tiene el efecto práctico de privar a los recurrentes de toda participación en los bienes comunes, y como si ello no fuere suficiente, les condena a pagar cuantiosas sumas al recurrido.(⁶) Expe-

---

(⁶) La sentencia dictada lee como sigue:
"Por los fundamentos expuestos én las Conclusiones de Hecho y de

dimos autos de revisión a petición, tanto del demandado don Luis Passalacqua Palmieri como de la sucesión de don Antonio Passalacqua Palmieri.

1. En el recurso de revisión interpuesto por don Luis Passalacqua Palmieri se señala particularmente que el tribunal de instancia erró al ordenar la división inmediata de los bienes que constituyen el activo de la comunidad porque a) en algunos de los bienes inmuebles—las dos edificaciones sitas en la calle José I. Quintón, de Coamo—hay otras personas interesadas que no fueron incluidas como partes en la acción sobre división; y, b) en el supuesto de que pudiera considerarse la acción ejercitada como una de partición de herencia, lo procedente sería el nombramiento de un contador partidor, con las facultades de preparar el correspondiente inventario, con la participación de todos los interesados.

En *Marchese* v. *Marchese*, 81 D.P.R. 729, 736 (1960), indicamos que aun cuando las acciones sobre división de comunidad denominadas *communi dividundo*, y las de división de herencia, conocida como *familia erciscundæ*, tienen una fisonomía similar, pues su objeto es poner fin a

Derecho dictadas en esta misma fecha, que se han unido a los autos y se hacen formar parte de la presente, el tribunal dicta sentencia declarando con lugar la demanda y adjudicando que la participación del comunero Antonio Passalacqua Palmieri, hoy su Sucesión, en la comunidad de bienes asciende a $38,415.84 y adeuda al comunero Juan Passalacqua Palmieri, la suma de $58,625.21; que la participación del comunero Luis Passalacqua Palmieri en la comunidad de bienes, es de $10,880.34, y adeuda a Juan Passalacqua Palmieri la suma de $36,007.84; y la participación del comunero Juan Passalacqua Palmieri en la comunidad de bienes es de $29,466.81.

"Se condena a la parte demandada a proceder a la división inmediata de las fincas o inmuebles que forman parte de la comunidad de bienes, en la proporción anteriormente adjudicada. Se condena, además, a Antonio Passalacqua, hoy su Sucesión, a pagarle al demandante Juan Passalacqua Palmieri la suma de $58,625.21, y a Luis Passalacqua Palmieri a pagar al demandante Juan Passalacqua Palmieri la suma de $36,007.84.

"Se declara sin lugar la reconvención en todos sus extremos.

"Se imponen las costas y gastos del litigio a la parte demandada, por partes iguales, y se le condena, asimismo, a pagar la suma de mil dólares ($1,000.00), por partes iguales, por concepto de honorarios de abogado."

594

una comunidad, una y otra se rigen por reglas distintas. Ferrandis Vilella, *La Comunidad Hereditaria*, Ed. Bosch (1954), pág. 162 y ss.; Gayoso Arias, *Naturaleza y desarrollo procesal de la acción "communi dividundo"*, Revista de Derecho Privado, 1920, pág. 209. Para la primera, el legislador ha provisto en los Arts. 334 a 340 del Código Civil, ed. 1930, 31 L.P.R.A. secs. 1279 a 1285; (⁷) para la segunda, y debido a la naturaleza misma de la herencia que demuestra la necesidad de disposiciones especiales que las regulen, *Trinidad et al.* v. *Sucn. Trinidad et al.*, 19 D.P.R. 647, 655 (1913), dispuso reglas claras y precisas en la Ley de Procedimientos Legales Especiales, Arts. 600 a 605 del Código de Enjuiciamiento Civil, ed. 1933, 32 L.P.R.A. secs. 2621 a 2626, (⁸) *Lassús et al.* v. *Ducret et al.*, 26 D.P.R. 390 (1918). Ahora bien, la comunidad hereditaria para cuya división es preciso el nombramiento de un contador partidor, en ausencia de acuerdo entre las partes, tiene su origen en el estado de indivisión que se crea entre los herederos al fallecimiento del causante o testador. En el presente caso, a pesar de que se hace continua referencia a los bienes que se adquirieron por herencia paterna y materna, un examen detenido de los hechos demuestra que la división que se gestiona no se refiere a una comunidad hereditaria. En cuanto a las estancias Emajagua y Guerrero, aparece claramente que fueron adjudicadas a los condóminos precisamente en las

---

(⁷) Para un análisis completo de estas disposiciones legales y su interdependencia con las relativas a la división de las herencias, recomendamos la lectura del artículo intitulado *El Proceso de Disolución de la Comunidad*, que apareció en la Revista de Derecho Procesal, año 1960, págs. 395 a 437, cuyo autor es el magistrado español José María Reyes Monterreal. Véase además, Maynar Barnolas, *Proceso de División de la Cosa Común*, Revista General de Legislación y Jurisprudencia, tomo 196, pág. 312 (1954).

(⁸) En términos generales, véanse, Jerónimo González, *La Comunidad Hereditaria*, Revista Crítica de Derecho Inmobiliaro, tomo 7, pág. 174 (1931); Borrel y Soler, *Derecho Civil Español*, (1954), tomo V, pág. 448 y ss.; Castán Tobeñas, *Derecho Civil Español, Común y Foral* (7a. ed. 1960), tomo 6, vol. 1, pág. 251 y ss.; Manresa, *Comentarios al Código Civil Español* (7a. ed., 1955), tomo VII, pág. 686 y ss.

operaciones particionales del caudal de la herencia materna, y que el estado de indivisión se creó voluntariamente por las partes al aceptar adjudicaciones en común proindiviso en la formación de la hijuela que les correspondió. Por lo que respecta a la estancia Dolores y los condominios en las fincas urbanas, la situación es un poco más incierta debido a la ausencia de evidencia primaria sobre el origen del título en comunidad. Aunque el demandante y sus contadores se refieren continuamente a su origen como procedente de la herencia paterna, se colige de la prueba documental presentada, que, al igual que en el caso anterior, el estado actual se creó por voluntad de las partes y no en virtud de una indivisión hereditaria. Se deduce que al fallecimiento del tronco común en 1882 le sucedieron, en adición a los tres hermanos que intervienen en este litigio, otros dos hermanos llamados Julio y Carlos. Siendo ello así, para que los actuales condueños puedan haber advenido a la situación de comunidad entre ellos tres solamente, es preciso que previamente haya tenido lugar una partición del caudal de la herencia paterna. Abona a esta conclusión precisamente el hecho de que en los inmuebles urbanos el condominio restante de dos quintas partes corresponde a los herederos de Julio y Carlos. Además, del exhibit 1 de la parte demandante, que es el Libro Mayor de las cuentas del administrador don Antonio Passalacqua Costa, aparece que los balances anuales de comprobación figuran a nombre de "la Sucn. de L. Passalacqua" hasta el día 31 de julio de 1901 (folio 163), y desde esa fecha y hasta el balance final a 17 de abril de 1915, aparecen balances de "Passalacqua Hnos. (los tres)" (folio 164), y cuentas particulares denominadas "Capital de Carlitos" (folio 146) y "Capital de Julio" (folio 147). Todos estos indicios nos llevan a presumir que alrededor del año 1901 se verificó la partición de la herencia paterna. Por tanto, no se trata de la división de una comunidad que requiera el nombramiento de un contador partidor, sino de

la acción *"communi dividundo." López* v. *López,* 14 D.P.R. 655 (1908.)

■ En tal supuesto, la intervención de todos los condueños es imprescindible, *Central Pasto Viejo* v. *Roig,* 33 D.P.R. 451 (1924), con el fin de que la adjudicación ordenando la división no resulte ineficaz, *Sucesión Collazo et al.* v. *Borrás, et al.,* 26 D.P.R. 482 (1918); *Fernández* v. *Gutiérrez del Arroyo,* 10 D.P.R. 60 (1906). Como hemos visto en cuanto a los dos inmuebles urbanos todo cuanto las partes poseen en común es un condominio de tres quintas partes, correspondiendo la participación restante a otras personas que no figuraron como partes. La necesidad de su inclusión en el pleito, y de ofrecerles la oportunidad de una audiencia, se manifiesta con mayor razón en el presente caso en que aparentemente se trata de bienes esencialmente indivisibles, (9) y en relación con los cuales el demandante ha figurado una valoración arbitraria sin prueba pericial sobre su valor en el mercado y teniendo como único respaldo la tasación efectuada para los fines de la imposición de la contribución territorial. (10) Se incidió en error al ordenarse la división inmediata de estos condominios en los inmuebles urbanos. Sin embargo, la orden para la división de los predios agrícolas está justificada.

2. Consecuencia de la actuación del tribunal de instancia al adoptar el informe del contable que se ofreció y admitió como exhibit 45 de la parte demandante, es sostener que el interés de los comuneros en la estancia Dolores y en el con-

---

(9) Véase, *López* v. *Suc. de Genaro Candelario,* 27 D.P.R. 744 (1919), sobre la necesidad de alegar la falta de acuerdo entre los interesados para adjudicar la cosa poseída en común a uno de los comuneros.

(10) Es posible que el tribunal a quo, anticipando que el efecto de su sentencia era la adjudicación de todos los bienes al actor, no se detuviera a examinar detenidamente esta cuestión. De todas formas, el alcance de sus pronunciamientos no podían ir más allá de ordenar la división interesada y reconocer los créditos que a su juicio correspondían al demandante, a menos que se intentara dentro del mismo pleito una ejecución anticipada de este aspecto de la liquidación de cuentas entre los comuneros.

dominio en los dos inmuebles urbanos sufrió alteración con motivo de la liquidación practicada por el administrador en 17 de abril de 1915. Después de establecer que el capital existente en dicha fecha ascendía a $48,379.77, incluyendo como elemento del activo los retiros hechos por los herederos, y sin otra base que la de una mera operación matemática, se concluye que las participaciones en el caudal común han quedado fijadas como sigue:

| Heredero | Participación | Retiros | Remanente | Participación en Remanente |
|---|---|---|---|---|
| Luis Passalacqua | $16,126.59 | 13,691.91 | 2,434.68 | 11% |
| Antonio Passalacqua | 16,126.59 | 4,431.26 | 11,695.33 | 51% |
| Juan Passalacqua | 16,126.59 | 7,458.77 | 8,667.82 | 38% |

Esta es la base que se pretende como adecuada para la liquidación de cuentas entre los comuneros y para la división de la comunidad. Y es precisamente la parte mayormente beneficiada con esta improvisada fórmula—los herederos de don Antonio, a quien se le señala una participación de más de la mitad—la que impugna el resultado obtenido.

Se pretende justificar esta determinación por el hecho de que los tres comuneros firmaron a continuación del asiento en el libro mayor titulado "Balance de los libros de los tres hermanos Passalacqua Palmieri al 17 de abril de 1915, *pª la entrega de las cuentas.*" En efecto, así fue, pero no puede atribuírsele a este acto otro significado que la aceptación de las *cuentas rendidas* por el Administrador, mas nunca el de alterar las participaciones iguales que los tres hermanos tenían en los bienes comunes. Los actos posteriores de las partes se encargan de confirmar esta apreciación nuestra. Al venderse la estancia Jácana que figura prominentemente en el haber común, los interesados se dividieron el precio neto por partes iguales. El mismo demandante manifiesta que "Yo entonces le di a ellos la tercera parte a cada uno de acuerdo con la participación de bienes que decía que era por partes iguales." (T.E. IV, pág. 143.) Los

cánones de arrendamiento de la misma finca se dividieron por partes iguales (T.E. IV, pág. 143.) Y en distintas escrituras relacionadas con la finca mencionada otorgadas después del año 1915 se reconoce siempre el hecho de que a cada uno de los condóminos corresponde una tercera parte (Exh. C, Demandados). Por otro lado, el propio demandante indicó que este balance del Mayor respondía a la "rendición de cuentas de él (don Antonio Passalacqua Costa) como tutor." (T.E. I, pág. 7.) Si se intentó alterar el régimen comunal de cuotas, ¿por qué no se otorgó la correspondiente escritura para ello?[11] Es ahora, cuando la suspicacia y la desconfianza son las notas que predominan en la relación entre los comuneros, dándole así realidad a la afirmación de los antiguos *"Communio est mater discordiarum"*, que se improvisa esta interpretación de los hechos.

Convenimos en que no hay prueba de clase alguna que sostenga esta determinación del tribunal de instancia y que en lo que respecta a estos bienes que originalmente formaron parte de la herencia paterna la situación que prevalece entre las partes es la de una comunidad con idéntica cuota cada uno.

█ 3. El otro error señalado se refiere al aspecto de liquidación de las cuentas entre los comuneros. Según surge de la sentencia que se transcribe en el escolio 6, el tribunal de instancia, adoptando una vez más el informe que constituye el exhibit 45 de la parte demandante, determinó que el recurrido don Juan era acreedor de su hermano Antonio en la suma de $58,625.21 y de Luis en $36,007.84. Ya hemos visto en la discusión del error anterior que el

---

[11] Nos ha llamado la atención la supresión del documento notarial a que alude el asiento practicado al folio 238 del libro Diario y que lee así: "Capital de los tres á Balance de Salida. Montante y saldo de esta cuenta Capital que de conformidad con el Estado é Inventario de esta fecha, entregado a los interesados que a continuación se expresan, *para los efectos del documento Notarial de hoy* ante don Manuel Tous Soto de Ponce (y aparece intercalado 'no⁰ 20 creo'), cierra esta contabilidad a mi cargo . . ."

informe no refleja adecuadamente la distribución que debe realizarse de los ingresos derivados de los bienes que originalmente formaron parte del caudal paterno. La semilla de la incorrección de la rendición de cuentas aparece en las entrañas mismas del informe en donde se afirma que:

". . . debido a que los libros de contabilidad donde se establecían todas las transacciones individuales efectuadas por los hermanos Luis, Antonio y Juan Passalacqua Palmieri en relación con los bienes de la comunidad paterna y materna correspondiente a los años 1915 al 1930 se quemaron, es imposible determinar la naturaleza de dichas transacciones, excepto aquellas realizadas a través de Don Juan Passalacqua Palmieri, uno de los comuneros, quien ayudaba a su tío, Don Antonio Passalacqua Costa, en la administración de los bienes de dicha comunidad. Además, debido a que dichos libros de contabilidad se quemaron, es imposible determinar las transacciones efectuadas por el administrador, Don Antonio Passalacqua Costa, en relación con los bienes de la comunidad paterna y materna para los referidos años."

Sin embargo, a pesar de esta admisión tan definitiva se continúa adelante y se fabrica una relación de ingresos y egresos digna de don Gonzalo Fernández de Córdova. Para ello, y en ausencia de los libros, se consideran *solamente* aquellas transacciones que permanecen vivas en el recuerdo del demandante, sin más comprobación que su mera afirmación, y que por feliz coincidencia para él se traducen en cargos para los demandados. Es significativo que el propio demandante indicó en su testimonio que estas cantidades que retiraban los otros dos comuneros procedían de los ingresos de la comunidad que retenía el tío Antonio, administrador hasta 1930, y lo distribuia entre los interesados. Así lo expresó el propio demandante: "Don Antonio Passalacqua Costa lo guardaba para darnos a nosotros a medida que lo íbamos necesitando" (T. E. I, pág. 16). Sin embargo, los anticipos se hacían en forma muy extraña según explica don Juan (T.E. I, pág. 19):

"¿Qué participación o de qué participación disfrutaban los dos hermanos suyos?

¿Luis y Antonio Passalacqua Palmieri?

Sí.

Cada vez que necesitaban dinero me lo pedían a mí.

¿Y usted se lo daba?

Y yo se lo mandaba.

¿Se lo daba en efectivo, en cheque o en valores?

Casi todo en cheques."

Decimos extraña porque ésta es la única versión que permite la presentación en evidencia de un sinnúmero de cheques expedidos por el demandante a favor de los demandados al correr de todos estos años, sin expresión de concepto alguno.

No se explica satisfactoriamente, a pesar de que es indiscutible que la carga de la prueba correspondía a la parte actora, el importe que ingresó con motivo de la disposición de las fincas rústicas y otros bienes que formaban parte del capital común ni los ingresos producidos bien por rentas o en la explotación de estas fincas hasta que las mismas salieron del patrimonio común. Solamente se consideran las transacciones que don Juan recuerda, "las que se realizaron a través de don Juan," y, cuando se le acosa en el contrainterrogatorio sobre estos otros datos sobre los cuales debe tener algunos conocimientos o información, se refugia en el conveniente comodín (*joker*) de la destrucción de los libros, cfr. *Colón Padilla* v. *Srio. de Hacienda*, 85 D.P.R. 707 (1962), y de la infidelidad de su memoria. Con una prueba de esta naturaleza, y cuyo andamiaje descansa sobre bases tan incompletas y parcializadas, no es posible sostener la sentencia dictada por el tribunal de instancia. En *Vilanova* v. *Srio. de Hacienda*, 83 D.P.R. 74 (1961), en que se trataba de la aplicación del método de incremento de capital a los fines de determinar los ingresos de un contribuyente, dijimos que el capital al comienzo del período contributivo debe establecerse en forma clara y adecuada mediante evidencia competente, esto es, debe descansar en bases razonables y no

en meras conjeturas. En igual forma, y por analogía, no podemos atribuir a los demandados una responsabilidad tan seria como la que representan los pronunciamientos de la sentencia relativos a la liquidación de cuentas fundándonos en recuerdos fragmentarios, y, por coincidencia, siempre favorables a la parte actora. Cfr. *Atlas Products Corp.* v. *Arroyo,* 85 D.P.R. 102 (1962).

Pero si la omisión de la información a que hemos hecho referencia en los párrafos anteriores no fuera suficiente, el informe adolece además de otros errores obvios, como no considerar entre los elementos del activo algunos ingresos que se establecieron por la misma prueba del demandante: ¿Dónde figuran los dineros obtenidos en la venta de las fincas Meléndez y Perchas? ¿Y los $3,500 obtenidos en la ejecución de la sentencia dictada contra don Baltazar Mendoza, arrendatario de la finca Jácana? ¿Y el importe del préstamo hipotecario tomado a don Manuel González para adelantarlo a Luis para que pagara a Franceschi y Cía., y que, eso sí, se le carga en cuenta a dicho demandado? Esto es suficiente para que no le demos valor probatorio alguno al referido informe en cuanto se refiere a la liquidación de cuentas por el período comprendido entre 1915 y 1930.

No obstante, de la prueba practicada tenemos suficiente información que nos permite hacer una reconstrucción de las cuentas desde el año 1930. A este respecto es conveniente advertir que dicha prueba no adolece del defecto de incertidumbre que hemos atribuido a la que se refiere a las cuentas por el período entre 1915 y 1930, y que, de todas formas, el tribunal de instancia le dio crédito. Tomándola como base, y sujeta a las rectificaciones menores que sean admisibles, puede afirmarse que en el período comprendido entre 1 de enero de 1930 y el 31 de mayo de 1952,

(A) Los bienes comunes produjeron, o han debido producir, las siguientes cantidades:

| | | |
|---|---|---|
| 1—Para ser cargadas a don Antonio Passalacqua Palmieri | | $12,764.75 |
|   a—Arrendamiento finca Dolores desde enero 1 de 1930 a mayo 31 de 1952 | $6,725.00 | |
|   b—Arrendamiento finca Guerrero desde enero 1 de 1930 a mayo 31 de 1952 | 3,362.50 | |
|   c—Frutos producidos por la finca Emajagua durante los años 1946–47 a 1949–50 (Exh. 8, Demandante) | $2,677.25 | $12,764.75 |
| 2—Para ser cargadas a don Juan Passalacqua Palmieri | | $16,078.16 |
|   a—Arrendamiento finca Jácana desde 24 de octubre de 1932 hasta el 31 de diciembre de 1946 | 23,475.00 | |
|   b—Arrendamiento finca Emajagua desde enero 1 de 1930 hasta diciembre 31 de 1945 | 5,400.00 | |
|   c—Arrendamiento condominio de tres quintas partes en dos inmuebles sitos en la Calle José I. Quintón ([12]) | 7,313.80 | |
|   d—Diferencia no distribuida del precio de venta de la finca Jácana | 153.71 | |

Menos:

| | | |
|---|---|---|
|   a—Intereses pagados desde enero de 1930: | | |
|   don Antonio Quilinchini | $4,666.66 | |
|   don Marcos Vecchini | 6,346.66 | |
|   don Edward Junghans | 3,522.22 | $14,535.54 |
|   b) Contribuciones pagadas correspondientes a años contributivos desde 1930: | | |
|   finca Jácana | $2,332.52 | |

([12]) Para llegar a esta suma se han tomado en consideración los cánones recibidos o debidos recibir a partir del 1 de enero de 1930, que en total ascendieron a $12,189.67, distribuidos en la siguiente forma: Francisco Anselmi, $2,025; Luis Colón, $592; Dr. Domínguez, $372.50; Servicio Selectivo, $165.33; Higrade H. Casting Co., $270; Manuel Cruz, $1,912.50; O.P.A., $616; Paquillo Caratini, $138; Juan Passalacqua, $5,778.34; Partido Popular, $180; y Luis R. Palmer, $140.

De esta suma corresponden $4,875.87 a los condueños de las dos quintas partes restantes.

| | | |
|---|---|---|
| finca Emajagua | $591.38 | |
| finca Atajo | 1,106.15 | |
| fincas urbanas (60% de $1,400.21) | 840.12 | $4,870.17 |

c) Reparaciones, fincas urbanas
   (60% de $1,431.08)                              858.64   $16,078.16

B) Desde el 1 de enero de 1930 hasta mayo 31 de 1952, don Juan Passalacqua Palmieri hizo anticipos a sus hermanos

a) a don Luis Passalacqua Palmieri,

| | | |
|---|---|---|
| según exhibit 43, | $5,882.17 | |
| según exhibit 33, | 500.00 | |
| según exhibit 40, | 1,500.00 | |
| según exhibit 35, | 500.00 | $8,382.17 |

b) a don Antonio Passalacqua

| | | |
|---|---|---|
| Palmieri, según exhibit 13, | $1,281.25 [13] | |
| según exhibit 14, | 72.96 | |
| según exhibit 15, | 134.75 | |
| según exhibit 25, | 637.40 | |
| según exhibit 42, | 654.44 | $2,780.80 |

Antes de abordar la liquidación final indicaremos que no hemos pasado por alto la defensa de prescripción interpuesta por los recurrentes hijos de don Antonio Passalacqua Palmieri en relación con el cobro de los cánones de arrendamiento de las fincas Dolores y Guerrero. Es cierto que el Art. 1866 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 5296, estatuye que prescriben por el transcurso de 5 años las acciones para exigir el cumplimiento de la obligación de satisfacer el precio de los arriendos, *Blanch* v. *Sucn. del Moral,* 57 D.P.R. 23 (1940); *Abarca* v. *Bank of Nova Scotia,* 46 D.P.R. 931 (1934), pero interpretadas propiamente las relaciones entre las partes, la acción que aquí se ejercita participa más bien de una para la rendición de cuentas, cuyo término extintivo según resolvimos en *Serrano* v. *Talavera,*

---

[13] De este exhibit, que es un estado de cuenta, hemos eliminado la partida de $8,500, precio de venta de la finca Burgos, recibido por don Antonio Passalacqua, por entender que la prueba establece preponderantemente que esta finca pertenecía particularmente a éste. Por eso le hemos cargado los $654.44 anticipados por don Juan para pagar ciertos gastos relacionados con la misma.

65 D.P.R. 438 (1945), es de 15 años, a tenor con lo dispuesto en el Art. 1864 del mismo código, 31 L.P.R.A. sec. 5294 sobre las acciones personales que no tienen término de prescripción fijado por ley. Siendo ello así, y considerando además que hay suficiente prueba en los autos para afirmar que en la correspondencia cursada entre las partes durante todo este período no son infrecuentes los requerimientos que recíprocamente se hacen sobre rendición de cuentas, la defensa de prescripción no puede prosperar.

El resultado de las operaciones efectuadas anteriormente señala que a los comuneros corresponde una cantidad neta de $28,842.91, o sea, $9,614.30 a cada uno. El demandante don Juan, después de satisfacer gastos legítimos de administración como contribuciones, intereses y reparaciones, recibió una cantidad neta de $16,078.16, de la cual hizo anticipos a don Luis, por $8,382.17, y a don Antonio, por $2,780.80. Retuvo, pues, únicamente $4,915.19, por lo cual resulta un balance a su favor de $4,699.11.

Ahora bien, a los fines de hacer completa justicia entre las partes y en vista de la conclusión a que hemos llegado precedentemente manteniendo la existencia de cuotas iguales entre los comuneros en los bienes existentes en 1915, parece equitativo y razonable que en la liquidación final consideremos las sumas que se les habían anticipado hasta el 17 de abril de dicho año en que se practicó la liquidación por el tío don Antonio, con la conformidad expresa de los comuneros. Montando los anticipos totales entonces a $25,581.94, el cuadro sinóptico de la liquidación final que se une como anexo A de esta opinión evidencia que al demandado recurrido se la adeuda la suma de $5,767.65, que deberá serle satisfecha en la siguiente forma: por su hermano Luis, $3,932.45, y por la sucesión Passalacqua Luna, $1,835.20, ([14]) que son

---

([14]) De esta suma de $1,835.20 procede deducir $277.76 que entregó don Antonio a don Juan en la liquidación del café de la finca Emajagua en los años 1946–1950, según resulta del Exh. 8 de la parte demandante.

precisamente las cantidades recibidas por éstos en exceso en la liquidación.*

*Se modificará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 29 de junio de 1960, de conformidad, con los términos de esta opinión, y así modificada, se confirmará, con un pronunciamiento eliminando la suma concedida para honorarios de abogado.*

ANEXO A

LIQUIDACIÓN COMUNIDAD PASSALACQUA *

|  | Participación correspondiente hasta 1915* | Participación correspondiente 1930-1952 | Total participación | Recibido hasta 1915 | Recibido 1930-52 | Total recibido | |
|---|---|---|---|---|---|---|---|
| Don Juan...... | $8,527.31 | $9,614.30 | $18,141.61 | $7,458 77 | $4,915.19 | $12,373.96 | (Crédito) $5,767.65 |
| Don Antonio .. | 8,527.31 | 9,614.30 | 18,141.61 | 4,431.26 | 15,545.55** | 19,976.81 | (Débito) $1,835.20 |
| Don Luis...... | 8,527.32 | 9,614.31 | 18,141.63 | 13,691.91 | 8,382.17*** | 22,074.08 | (Débito) $3,932.45 |

* El total de anticipos hasta esa fecha, $25,581.94, dividido entre los tres comuneros.

** Retenido según párrafo A-1, $12,764.75, más la cantidad anticipada por don Juan, $2,780.80.

*** Cantidad anticipádale por don Juan.