La Iglesia de Dios Pentecostal, Inc., demandante y recurrida, *v.* Víctor Falú Nelson, demandado y recurrente.

Número: R-71-255        Resuelto: 25 de marzo de 1975

*R. V. Pérez Marchand,* abogado del recurrente; *Félix A. Ramos Cabán,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Este litigio surgió en torno a un contrato celebrado entre la Iglesia de Dios Pentecostal, demandante recurrida, y Víctor Falú Nelson, demandado recurrente, mediante el cual las partes concretaron sus respectivas participaciones indivisas en una finca. Víctor Falú Nelson advino dueño de su participación de un 25% de una finca a título de herencia materna. El 75% restante de dicha propiedad, perteneciente al padre y a un hermano de Falú, fue comprado por la Iglesia por $120,000. La Iglesia se proponía edificar allí un templo y una escuela.

La propiedad concernida es una finca urbana de 2.03 cuerdas, sita en el barrio Sabana Llana de Río Piedras, en lindes por el norte y oeste con la quebrada Juan Méndez; por el sur, con la Avenida de Diego; y por el este con la finca de la cual se segregó. Hay en dicha propiedad cuatro edificaciones —dos de hormigón y dos de madera. Una de ellas es propiedad de Falú y allí opera, u operaba, un negocio de venta y reparación de equipo electromagnético automotriz.

La contratación sobre esta propiedad siguió el siguiente curso. El padre y el hermano de Falú concedieron una opción de compra a la Iglesia sobre su 75% de la finca antes de agosto de 1964. El día 15 de ese mes y año la Iglesia y Víctor Falú celebraron un contrato escrito y notarizado adjudicándose, mediante las causas correspondientes, predios específicos de la finca que había estado indivisa. En 5 de septiembre de 1964 el padre y el hermano de Víctor Falú Nelson otorgaron la escritura pública mediante la cual vendieron su participación a la Iglesia.

El contrato entre Víctor Falú y la Iglesia otorgó al primero una parcela de 1,584.16 metros cuadrados y a la Iglesia una parcela de 6,571.71 metros cuadrados. Los lindes de cada parcela fueron especificados en el contrato, tomando como base un plano de mensura preparado en mayo de 1964 por el Ingeniero Tomás Viner Alcázar. Víctor Falú recibió además $5,000 como compensación por haber recibido menos del 25% del terreno total de la finca, pago que hizo a Falú la Iglesia de Dios Pentecostal.

En el contrato se pactó que cada parte tendría la plena propiedad de sus respectivas parcelas y que a fin de poder otorgarse los títulos correspondientes, se sometería a la Junta de Planificación una petición para la segregación del predio adjudicado a Víctor Falú. Convinieron además, que de buena fe harían los "esfuerzos necesarios" para que la Junta aprobase dicha segregación. También pactaron que si por razones ajenas a la voluntad de las partes la Junta no autorizaba la segregación, Falú se obligaba a vender a la Iglesia la parcela que le había sido adjudicada a él. Se dispuso también que si las partes no llegaban a un acuerdo en cuanto al precio, cada una nombraría un perito tasador para que éstos fijasen el precio y en caso de desacuerdo entre los peritos se nombraría a un tercero por las partes o por los peritos, quien habría de dar un laudo final sobre el valor del predio. En la valoración se tomaría en cuenta el valor de la edificación y del negocio de Falú. De realizarse la compraventa se descontarían del precio a pagarse por la Iglesia los $5,000 que ya ésta había pagado a Falú.

Desde antes de celebrarse el contrato Víctor Falú sabía que el Gobierno de la Capital de Puerto Rico estaba expropiando parte de la finca para las obras de canalización de la quebrada Juan Méndez. A la fecha de la celebración del contrato Falú y la Iglesia sabían de la canalización de la quebrada pero no sabían con exactitud por qué parte de la finca cruzaría el canal. Las obras en la finca fueron comenzadas en diciembre

de 1964, esto es, cuarto meses después de celebrado el contrato entre Falú y la Iglesia.

El canal no siguió el cauce original de la quebrada, sino que atravesó la finca aislando dos predios de aproximadamente 794 y 881 metros cuadrados, respectivamente. Esos dos predios y el terreno ocupado por el canal fueron expropiados por el Gobierno de San Juan de Puerto Rico. Uno de esos predios formaba parte de la parcela de Falú y el otro formaba parte de la parcela de la Iglesia. Antes de la expropiación, la parcela de Falú tenía la forma de una franja o de un rectángulo largo. Después de la expropiación quedó con la forma de un triángulo isósceles con una base de 16 metros, lados de 92 metros y cabida de 789 metros cuadrados.

Después de hecha la canalización Falú contrató al Ingeniero Jaime Fuentes para que preparara un plano de mensura y segregación, el que fue terminado en abril de 1965. Falú ni el Ingeniero Fuentes consultaron a la Iglesia en la preparación del plano y el ingeniero trazó una parcela a ser segregada para Falú, siguiendo las instrucciones de éste. Dicha parcela tiene forma rectangular, cabida de 1,504.143 metros cuadrados y no coincide ni en su localización ni en su configuración con el plano original preparado por Viner Alcázar. La forma rectangular de esa parcela se obtuvo, en el plano hecho por Fuentes, tomando más de 700 metros que en el plano de Viner aparecen adjudicados a la Iglesia.

En 15 de abril de 1965 Falú escribió a la Iglesia informándole que estaba terminado el plano para solicitar la segregación ante la Junta de Planificación y que esperaba su aviso para ambos ir a solicitarla. La Iglesia no contestó dicha comunicación y además sostiene que Falú nunca puso a su disposición el mencionado plano.

Posteriormente hubo ofertas de compra y venta entre las partes, pero no llegaron a un acuerdo. En 31 de mayo de 1967 la Iglesia, sin notificar a Falú, presentó en la Junta de Planificación una solicitud de segregación de los 789 metros que

restaban a la parcela adjudicada a Falú. La Iglesia unió a su solicitud un plano calcado por Viner en el 1967 de otro plano preparado por el Ingeniero Tejada en marzo de 1964, cuyo plano había sido preparado para que el Gobierno de la Capital expropiara las dos parcelas que quedaron separadas de la finca principal debido a la canalización antes mencionada. La Junta, por error, entendió que lo que se pretendía era segregar esas dos parcelas y denegó la solicitud de segregación hecha por la Iglesia en 1967.

En 26 de julio de ese año la Iglesia presentó una segunda petición haciendo claro que el predio que interesaba segregar era el remanente del que fue adjudicado a Falú, el que describimos un triángulo isósceles y que tenía una cabida de 789 metros cuadrados. En agosto del mismo año la Junta denegó la segregación por las siguientes dos razones: (1) que el predio que se interesaba segregar tenía una configuración física inadecuada porque el frente no guardaba proporción deseable con relación al fondo y (2) que parte de la finca principal estaba incluida en un Distrito M, lo que requería que la finca fuese mejorada y reclasificada, antes de que la Junta aprobase la segregación.

El Informe de la Junta desaprobando la segregación expresa que cualquier parte interesada puede solicitar apelación de esa decisión, pero la Iglesia no ejerció ese derecho.

En 20 de septiembre de 1967 la Iglesia escribió a Falú informándole que la Junta de Planificación había denegado la segregación, por lo que procedía, de acuerdo con el contrato, que se nombrasen los peritos tasadores para el avalúo de la parcela y de la estructura pertenecientes a Falú.

El abogado de Falú contestó a la Iglesia en 25 de septiembre de 1967, expresando que ésta había acudido a la Junta de Planificación sin contar con Falú y sin darle la oportunidad de intervenir, y le solicitó le remitiera copia de la resolución de la Junta para examinarla antes de considerar lo relativo al nombramiento de peritos. Poco más de tres meses después,

el 10 de enero de 1968, la Iglesia instó demanda ante el Tribunal Superior sobre "Resolución o Nulidad de Contrato y División de Comunidad."

En su demanda enmendada la Iglesia alegó que Falú incumplió el contrato al negarse a nombrar los peritos tasadores; que el contrato es nulo porque el mismo proveyó para la división del terreno sin la previa aprobación de la Junta de Planificación, aprobación que posteriormente fue denegada; que no es posible dividir la finca en la forma pactada; que las partes no han podido llegar a un acuerdo para que una compre a la otra su participación en la finca; y que la demandante no desea permanecer en la indivisión. Solicitó que el Tribunal decretase que el contrato es nulo por violar la Ley de Planificación o, en la alternativa, que decretase su resolución por incumplimiento y, en uno u otro caso, que declarase la existencia de una comunidad entre las partes y ordenase la venta en pública subasta de la finca.

También solicitó que si el tribunal entendía que el contrato era válido y que no debía resolverse, nombrase el perito tasador que debió haber nombrado el demandado, para que conjuntamente con el tasador que nombrase la demandante, y si fuese necesario conjuntamente con el tercer perito, se valorase la parcela mencionada en el párrafo CUARTO (F) del contrato y se ordenase al demandado a otorgar la escritura de compraventa por el precio que los peritos fijasen, acreditándose a dicho precio los $5,000 que la demandante había adelantado al demandado Falú.

Falú contestó la demanda enmendada y reconvencionó por alegados daños causádosle por el pleito. Alegó, en lo esencial, que la segregación de la finca es factible; que él se negó a nombrar peritos porque la Iglesia violó el contrato al solicitar unilateralmente la segregación ante la Junta de Planificación; y que la Iglesia está impedida de cuestionar la validez del contrato.

Celebrado el juicio, después de desfilada la prueba, el tribunal no emitió decisión y en cambio solicitó al abogado de la demandante que presentase un alegato porque existían áreas oscuras de hecho y de derecho y un alegato sería de ayuda al tribunal. El tribunal concedió al demandado un término para replicar si lo creyese conveniente.

Posteriormente el tribunal dictó sentencia, declarando con lugar la demanda y sin lugar la reconvención, en la cual adoptó literalmente todos los párrafos del alegato presentado por el abogado de la demandante.

En resumen, la ilustrada Sala sentenciadora decretó la nulidad del contrato celebrado entre Falú y la Iglesia de Dios Pentecostal; condenó a Falú a devolverle a la demandante los $5,000 que había recibido; declaró a las partes dueñas en común proindiviso de la finca descrita en el párrafo primero de la demanda, con excepción de la estructura propiedad de Falú donde éste tenía su negocio; declaró que en dicho proindiviso la demandante era dueña de tres cuartas partes de la propiedad y ordenó la liquidación de dicha comunidad mediante la venta en pública subasta de la misma por un precio mínimo de $120,000. Acordamos revisar.

Los errores planteados pueden resumirse como sigue: que la Iglesia actuó de mala fe y en violación del contrato al acudir unilateralmente a la Junta de Planificación para solicitar una segregación que sabía que no se aprobaría; que la segregación es posible a base del plano preparado por Fuentes y que siendo posible lo que procede es que las partes concurran a la Junta para lograr la segregación; que el contrato no es nulo y procede que se nombren los peritos según lo pactado; pero aun cuando el contrato fuese declarado nulo lo que procede es la división de la finca entre las partes y no la pública subasta, por tratarse de una finca divisible.

Somos de opinión que el recurrente está en lo correcto en ciertas cosas y en otras no. Es correcto el planteamiento al efecto de que la Iglesia acudió unilateralmente a la Junta de

Planificación sin notificar a Falú. Aparentemente era ventajoso para la Iglesia que su petición de segregación no fuese aprobada por la Junta, pues entonces podría, conforme al contrato, exigir de Falú que le vendiese su parte de la finca. Por otro lado, Falú pretendía que la Iglesia aceptase la segregación según trazada en el plano hecho por Fuentes pero esa segregación es distinta a la que fue convenida en el contrato. La segregación convenida en el contrato fue la que la Iglesia sometió a la Junta, excluyendo las tierras expropiadas por el Gobierno de la Capital. No se justifica ordenar a las partes a que sometan conjuntamente la segregación convenida en el contrato pues, con toda probabilidad la Junta volvería a rechazarla por los mismos motivos que justificaron su rechazo anterior. Estamos, por consiguiente, ante la situación prevista en el contrato en el sentido de que si la Junta no aprobaba la segregación, se tasaría la parcela adjudicada a Falú mediante el contrato y éste la vendería a la Iglesia. Pero el tribunal concluyó sobre el particular lo siguiente:

> "Esta promesa de compraventa de una parte específica de la finca, sin haberse obtenido el permiso de segregación y, específicamente, para surtir efecto cuando dicho permiso hubiese sido denegado es nula . . . 'recae sobre una parcela de terreno de la cual la promitente o vendedora no podía disponer a la fecha en que se concertó el acuerdo' (ni podría disponer a la fecha en que debería de llevarse a cabo el acuerdo; carecería de objeto lícito). *E.L.A.* v. *De la Torre*, 87 D.P.R. 800."

■ Esa conclusión del tribunal de instancia es errónea. En primer lugar, se apoya en un caso que ha sido dejado sin efecto por nuestra jurisprudencia posterior y también por acción de la Asamblea Legislativa de Puerto Rico. Nuestra jurisprudencia reciente considera válido un contrato de compraventa y segregación sujeto a la aprobación de la Junta de Planificación. *Torres Negrón* v. *Registrador*, 98 D.P.R. 822, 825 (1970) ; *Meléndez* v. *Jiménez Realty, Inc.*, 98 D.P.R. 892

(1970) ; *Segarra* v. *Vda. de Lloréns,* 99 D.P.R. 60, 78–80 (1970).

Mediante la Ley Núm. 44 de 28 de mayo de 1970 se enmendó el Art. 24 de la Ley de Planificación, 23 L.P.R.A. sec. 25. Esa enmienda relajó la prohibición que contenía el artículo original de otorgamiento de escrituras o contratos de lotificación si no habían sido sometidos previamente a la Junta de Planificación y aprobados por ésta. El texto vigente, según enmendado por la citada Ley Núm. 44 de 1970, permite la ratificación y convalidación si con posterioridad al otorgamiento de la escritura o del contrato la Junta aprobase la lotificación concernida. La sentencia que nos ocupa es posterior a dichos casos y a dicha enmienda legislativa.

En segundo lugar, la compraventa que correspondía llevar a cabo no requería aprobación de la Junta, pues no conllevaba una lotificación o segregación física del terreno, sino que, por el contrario, consolidaba en un solo dueño lo que antes pertenecía a dos. Se recordará que mediante el contrato las partes concretaron y se adjudicaron sus respectivas participaciones en el inmueble y acordaron que si no se efectuaba la segregación Falú le vendería su participación a la Iglesia.

En vista de lo anterior, *se revocará la sentencia recurrida y se concederá a las partes un término de treinta días, a partir de la notificación de la sentencia en este caso, para que nombren sus respectivos peritos tasadores a tenor con lo dispuesto en el inciso (F) del párrafo CUARTO del contrato celebrado entre ellas, cuyos peritos deberán fijar el valor de la propiedad de Víctor Falú, a tenor con lo dispuesto en el párrafo CUARTO (G) del contrato.*

*Si expirado dicho término de treinta días las partes no han nombrado sus peritos, o si estos no se han puesto de acuerdo sobre la valoración o sobre el nombramiento del tercer perito, el Tribunal Superior, a petición de cualquiera de las partes, nombrará el tercer perito quien dará el laudo final*

*respecto al valor de la propiedad concernida. Una vez hecho lo anterior la escritura de compraventa se otorgará conforme al contrato entre las partes.*