AMERICAN TITLE INSURANCE CO., demandante y recurrida, *v.* RAFAEL GUERRERO GUERRERO Y OTROS, demandados y recurrentes.

*Número:* R-73-220          *Resuelto:* 30 de septiembre de 1975

---

*Raúl E. Casanovas Balado,* abogado de la compradora-recurrente A & E Development Corp.; *Benítez Gautier, Sequeira & Emanuelli* y *Dennis Martínez Irizarry,* abogados de Rafael Guerrero Guerrero; *Beverley, Rodríguez, Estrella & Pesquera,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

En 9 de diciembre de 1965, estando en vigor la disposición que hacía ineficaz cualquier otorgamiento de escritura pública o contrato privado de lotificación si no hubiere sido aprobada previamente dicha lotificación por la Junta de Planificación (excepto si estuviere exento de ello), el Registrador de la Propiedad denegó la inscripción de una finca de 17.1360 cuerdas segregada de otra de mayor cabida por no haberse acreditado la aprobación previa de la segregación por la Junta.

La aludida disposición legal a la fecha de dicha transacción que forma parte de la Ley de Planificación [1] disponía como sigue:

---

[1] Ley Núm. 213 de 12 de mayo de 1942, según subsiguientemente enmendada.

"Carecerá de eficacia cualquier otorgamiento de escritura pública o contrato privado de lotificación si no ha sido sometida previamente dicha lotificación a la consideración de la Junta de Planificación de Puerto Rico y de haber sido aprobada por ésta, excepto en aquellos casos en que lo permita el Reglamento de Lotificación." Art. 24, Ley Núm. 213 de 12 de mayo de 1942, según enmendada. 23 L.P.R.A. sec. 25.

El tribunal de instancia declaró la nulidad de la segregación de referencia, así como la de la compraventa e hipoteca que se efectuaron simultáneamente mediante la escritura pública número 106 titulada Agrupación, Segregación, Compraventa e Hipoteca, otorgada en 28 de abril de 1964 ante el Notario Público Ricardo L. Rodríguez Padilla, por no haber la Junta aprobado previamente la segregación de la parcela objeto del pleito, ni tampoco surgir de los términos de dicha escritura que dichas transacciones estuvieren sujetas a convalidación mediante la condición suspensiva de la eventual aprobación de la Junta.

Los hechos expuestos por el tribunal de instancia son los siguientes: El Dr. Rafael Guerrero y su esposa segregaron y vendieron la finca en cuestión a la compradora-recurrente A & E Development Corp., en adelante "A & E", por la suma de $160,000, confesando los esposos Guerrero haber recibido de la compradora-recurrente la suma de $85,000 con antelación al otorgamiento, más tres pagarés hipotecarios por la suma de $20,000 cada uno, constituyendo el remanente del precio la suma de $15,000 que retuvieron los compradores como aportación de los esposos vendedores para la construcción de una planta de tratamiento de aguas negras. La compradora constituyó a su vez en la misma fecha una hipoteca, mediante escritura separada a favor de Berens Mortgage Bankers, Inc., en adelante "Berens" por la suma de $435,000, accediendo los esposos Guerrero a que esa hipoteca tuviera preferencia sobre la que constituyera la compradora-recurrente a su favor.

Surge además que Berens anticipó a A & E en varias partidas la suma de $99,707.50 a cuenta de la transacción de préstamos hipotecarios ya mencionada. Antes, sin embargo, había adquirido Berens una póliza de American Title Insurance Co., en adelante "la compañía de seguros", mediante la cual ésta aseguraba el título de la finca en cuestión. Ante la negativa del Registrador de la Propiedad de inscribir la finca objeto de este pleito, la compañía de seguros mencionada pagó a Berens la suma de $99,707.50 que ésta le reclamara como pérdida con motivo del alegado defecto en el título de la finca de A & E, quedando subrogada la compañía de seguros recurrida en todos los derechos que Berens tenía contra los dueños de la finca de marras.

El presente pleito se inició mediante demanda instada por la compañía de seguros contra la compradora de dichos terrenos A & E y los vendedores esposos Guerrero. Al declarar el tribunal de instancia la nulidad de la segregación condenó a A & E y al Dr. Rafael Guerrero Guerrero a pagar solidariamente a la compañía de seguros la suma de $99,707.50 más los intereses desde la fecha de la radicación de la demanda y la suma de $7,000 para costas, gastos y honorarios de abogado, y disponiendo que el pago hecho por cualesquiera de los demandados exonerará al otro demandado de cumplir con los términos de esta sentencia. De dicha sentencia recurre ante nos A & E pero no el codemandado Dr. Rafael Guerrero Guerrero.

Con posterioridad a la segregación que dio motivo a este pleito el Art. 24 de la Ley de Planificación citado precedentemente se enmendó mediante la adición del siguiente disponiéndose:

". . . Disponiéndose que cualquier otorgamiento por medio de escritura pública o contrato privado en el cual se haga una lotificación sin haber sido previamente sometida y aprobada por la Junta de Planificación, cuando ello fuere necesario, quedará ratificado y convalidado si con posterioridad a dicho otorga-

miento la Junta de Planificación aprobare mediante resolución la lotificación objeto de la escritura o contrato privado." Ley Núm. 44 de 28 de mayo de 1970, sec. 1, 23 L.P.R.A. sec. 25, Sup. Acum. 1975, pág. 102.

Una lectura del pronunciamiento de la Comisión de lo Judicial de la Cámara de Representantes copiado a continuación, al recomendar la aprobación de dicha medida enmendatoria revela el alcance de la misma:

"En síntesis, lo que establece este proyecto es la posibilidad de que un documento considerado totalmente nulo pueda cobrar validez una vez obtenido el permiso de la Junta de Planificación, sin necesidad de rehacer el documento. Esto, sin embargo, no significa que se permitirá la inscripción con defecto subsanable sin el requerido permiso de la Junta de Planificación. Por el contrario, el documento sin el permiso no producirá ninguna operación en el Registro, pero una vez obtenido este permiso se convierte en un documento calificable sin necesidad de nuevo otorgamiento." *Diario de Sesiones de la Cámara*, 1970, vol. 24, Parte II, pág. 830.

■ Antes de la enmienda este Tribunal había resuelto que la prohibición de segregación sin la previa aprobación de la Junta era absoluta, excepto que los otorgamientos eran confirmables si desaparecía la causa de nulidad consistente en la ausencia de la aprobación por la Junta, *Torres Negrón* v. *Registrador*, 98 D.P.R. 822 (1970); como también si del propio contrato surgía la intención de las partes de suspender sus efectos hasta tanto la Junta concediere su aprobación. *Meléndez* v. *Jiménez Realty, Inc.*, 98 D.P.R. 892 (1970); *Segarra* v. *Vda. de Lloréns*, 99 D.P.R. 60 (1970). El efecto de la enmienda fue el de ampliar nuestra interpretación, no siendo ya necesaria la condición suspensiva para otorgar validez al contrato, ya que se convalidan las segregaciones contenidas en contratos existentes si la Junta impartiere su aprobación a posteriori. Así, dijimos en *Iglesia de Dios Pentecostal* v. *Falú*, 103 D.P.R. 611 (1975).

". . . El texto vigente, según enmendado por la . . . Ley Núm. 44 de 1970, permite la ratificación y convalidación si con posterioridad al otorgamiento de la escritura o del contrato la Junta aprobase la lotificación concernida. La sentencia que nos ocupa es posterior a dichos casos y a dicha enmienda legislativa."

También es posterior a la enmienda legislativa la sentencia que ahora revisamos. Veamos el historial ante la Junta. La prueba en el caso de autos dejó demostrado que en 15 de abril de 1964 la Junta había aprobado la segregación de un predio de 5.33 cuerdas de una finca de mayor cabida mediante la tercera extensión al informe número L-1286. Esta segregación se hizo a través de las gestiones de la entidad Acevedo, Elías & Associates, la que más tarde fue incorporada bajo el nombre de A & E Development Corp., la aquí recurrente, y adquirió la finca de 17.136 cuerdas compuesta del referido predio de 5.33 cuerdas y de otro de 11.8058 cuya segregación se obtuvo en 13 de octubre de 1967 mediante la cuarta extensión al informe número 59-L-950. Un examen del legajo del caso demuestra que A & E se mantuvo activa junto al Dr. Guerrero hasta lograr la aprobación del predio de 11.8058 cuerdas para así convalidar la transacción de compraventa de la finca de 17.136 cuerdas que es objeto de este pleito. Su interés continúa aún vivo al insistir ante nos en que la transacción de segregación y compraventa es válida conforme lo dispone el Art. 24 después de enmendado en 1970. El propio informe de la Junta aprobando la segregación de las 11.8058 cuerdas revela el propósito de aprobar la formación de la finca de 17.136 cuerdas al expresar:

"La creación de este predio de 11.8058 cdas. como finca independiente, es con el propósito de agruparlo al predio G de 20,952.94 metros cuadrados (5.33 cuerdas) previamente segregado para formar una finca de 67,354.64 metros cuadrados (17.136 cuerdas) que constituye el predio del desarrollo alterno aprobado por la Junta en una tercera extensión al Informe núm. L-1286 fechado a 15 de abril de 1964."

■ Los trámites ante la Junta continuaron hasta que finalmente, en 21 de octubre de 1970 la Junta convalidó y ratificó las segregaciones de los predios de 5.33 y 11.8058 cuerdas respectivamente, autorizando la lotificación de la finca de 17.1360 cuerdas objeto de este pleito. Las tres operaciones surgen del expediente de la Junta elevado ante nos. Dicha aprobación tuvo el efecto de convalidar la segregación dando así eficacia legal a la escritura Núm. 106 de Agrupación, Segregación, Compraventa e Hipoteca de 28 de abril de 1964 otorgada ante el Notario Público Ricardo L. Rodríguez Padilla, conforme lo dispone la enmienda de 1964 al Art. 24 de la Ley Núm. 116.

En un caso reciente que planteaba una cuestión similar a la del caso de autos reiteramos que la enmienda de 1970 "atenúa el rigor de la prohibición" admitiendo la convalidación del contrato si con posterioridad la Junta de Planificación aprobare la lotificación. *Rodríguez Padilla* v. *Cabassa*, 102 D.P.R. 419 (1974). En ese caso dimos oportunidad a las partes para que sometieran a la Junta la segregación del solar objeto del pleito, anticipando el criterio de que de aprobarse la misma quedaría convalidado el contrato de compraventa, y por el contrario, de no obtenerse la aprobación solicitada el contrato no tendría eficacia legal y no sería susceptible de cumplimiento específico ante los tribunales.

Es de justicia que la transacción quede convalidada luego de la aprobación de la Junta, sin que fuese necesario el otorgamiento de nuevos contratos, ya que en otra forma las partes quedarían obligadas a envolverse en complejas, costosas y prolongadas gestiones judiciales y extrajudiciales como resultado del tiempo transcurrido desde la transacción original, de los cambios en valores, de la localización de las partes, y otros trámites enojosos.

Habida cuenta de que la Junta aprobó la segregación de la finca de 17.1360 cuerdas objeto de este litigio en 21 de octubre de 1970 y siendo válida la segregación de la misma

al amparo del disponiéndose del Art. 24 de la Ley de Planificación y Presupuesto *se revocará la sentencia del tribunal de instancia de 31 de mayo de 1973 y en su consecuencia se declarará la demanda sin lugar en todas sus partes, sin perjuicio del derecho que pueda tener la recurrida a obtener el reembolso de lo pagado a Berens Mortgage Bankers, Inc., bien fuere por la vía judicial o extra-judicialmente.*