EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, ETC., demandante y recurrido, *v.* MERCEDES DE LA TORRE, demandada y recurrente.

Número: 347   Resuelto: 21 de marzo de 1963

*Otero Suro & Otero Suro* e *Ismael H. Herrero, Jr.,* abogados de la recurrente; *J. B. Fernández Badillo, Procurador General,* y *Arturo Estrella, Procurador General Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

En 10 de julio de 1958 el Estado Libre Asociado de Puerto Rico recurrió ante el Tribunal Superior, Sala de San Juan, e instó un procedimiento de expropiación forzosa para adquirir una parcela de terreno de 134 milésimas de cuerda, equivalente a 526.63 metros cuadrados, propiedad de la demandada doña Mercedes de la Torre, consignando como compensación justa y razonable la suma de $5,500. El procedimiento se incoó bajo la autoridad conferida por la Ley General de Expropiación Forzosa de 12 de marzo de 1903, según ha sido enmendada, 32 L.P.R.A. secs. 2901-2913, y específicamente bajo la Ley Núm. 19 de 8 de abril de 1942,[1]

---

[1] Se refiere a la ley mediante la cual se creó la Autoridad de las Fuentes Fluviales de Puerto Rico, que al enumerar en su Sec. 6 las facultades de la agencia, expresamente provee en la subdivisión (j): "Adquirir por los procedimientos indicados en la anterior subdivisión (h) ['por compra bien sea por convenio o mediante el ejercicio del poder de expropiación forzosa, arrendamiento, manda, legado o donación'] cualesquiera bienes raíces..." 22 L.P.R.A. sec. 196 (j).

22 L.P.R.A. sec. 191 *et seq.* Los terrenos se destinaban para la construcción de un centro de distribución de energía eléctrica.

La parcela objeto del procedimiento, cuya adquisición fue autorizada por la Junta de Planificación de Puerto Rico mediante informe de fecha 4 de junio de 1958, se segregó de una finca de mayor cabida inscrita al folio 72 del tomo 108 de Río Piedras, y se describe como sigue:

"URBANA: Parcela de terreno radicada en el Barrio Monacillos (hoy Gobernador Piñero) de San Juan, propiedad de Mercedes de la Torre, con una cabida superficial de 0.1340 de una cuerda, equivalente a 526.63 metros cuadrados y en lindes: por el Norte y Oeste con terrenos de la Autoridad de las Fuentes Fluviales; por el Sur con terrenos de la Autoridad de las Fuentes Fluviales y la Carretera Estatal Núm. 2, y por el Este con terrenos de doña Mercedes de la Torre."

Del plano que se unió a la demanda aparece que el solar expropiado se compone de dos parcelas, ambas con frente a la Carretera Estatal Núm. 2, con una cabida de 500.10 y 26.53 metros cuadrados.

En 25 de agosto de 1958 la demandada retiró el balance de la suma consignada ascendente a $4,852.74, luego de consentir a que se le retuviera la suma de $647.26 que adeudaba al erario público por concepto de contribuciones territoriales. Formuló contestación en la cual alegó que, excluyendo la suma de $2,500 que le había sido entregada "por conducto de la Autoridad de las Fuentes Fluviales de Puerto Rico, *verdadera parte demandante*," el valor justo y razonable de la parcela expropiada ascendía a $25,000.

Al comenzar una vista señalada para el día 14 de diciembre de 1959, el Estado Libre informó que habiéndose hecho un "restudio [*sic*] de la valoración efectuada," (²) solici-

---

(²) El abogado de la recurrente aclaró que la reducción en la compensación no respondía a un nuevo estudio de valoración "sino que está dentro de este procedimiento pretendiendo poner en vigor un convenio entre la aquí demandada y la Autoridad de las Fuentes Fluviales del 1958 [*sic*] . . ."

taba se enmendaran las alegaciones al efecto de exponer que la compensación a que tenía derecho la propietaria ascendía únicamente a $868.93. El tribunal a quo accedió oralmente a permitir la enmienda, actuación que confirmó al siguiente día mediante una resolución escrita en la cual dispuso que la demanda quedara enmendada a los efectos que la suma de $868.93 era la justa compensación, y ordenó además a la parte demandada a reembolsar la diferencia de $4,631.07. De la suma consignada a favor de la recurrente en otro pleito de expropiación radicado con el número E-60-59 se expidió un cheque por la cantidad indicada en 19 de febrero de 1960 a favor de la Autoridad de las Fuentes Fluviales.

Fue el pleito a juicio. Se estipuló que, en caso "de no ser válido el contrato" a que nos referiremos a continuación, a la fecha de la incautación el valor en el mercado de la parcela descrita era de $10,700. El "contrato" a que se refieren las partes es la escritura Núm. 26 de fecha 19 de abril de 1948 otorgada ante el Notario don Antonio M. Bird que se tituló "Segregación, Compraventa y Constitución de Servidumbre." Resumiremos los pactos principales convenidos por los otorgantes —la Autoridad de las Fuentes Fluviales de Puerto Rico y doña Mercedes de la Torre— en virtud del mencionado instrumento: a) de dos parcelas de terreno de 19.79 cuerdas y 2,085.30 metros cuadrados, la señora de la Torre segregó 5.439 cuerdas, 76.18 metros cuadrados y 765 metros cuadrados y los vendió a la Autoridad "por el convenido precio a razón de $1.65 el metro cuadrado," o sea, por un precio total de $36,663.15; b) "por y en consideración de la suma de un dólar ($1.00)," la señora de la Torre constituyó una servidumbre aérea perpetua para el paso de líneas de transmisión de la Autoridad sobre dos parcelas de 512.94 y 500 metros cuadrados; obligándose a no construir edificación alguna sobre la primera y a dedicarla exclusivamente a los fines de la construcción de una calle, y disponiéndose además que de no efectuarse la construcción de

ésta, la propietaria se comprometía a venderle la parcela a la Autoridad por el precio unitario ya mencionado; y, en cuanto a la segunda, a no construir sobre la misma edificación alguna de más de una planta y nunca de una altura mayor de doce pies. En cuanto a esta última parcela —la de 500 metros cuadrados— se insertó un convenio adicional, cuya fuerza vinculante se invoca por el Estado Libre a los fines de fijar la valoración en el presente procedimiento, que textualmente dice: "En caso de que la propietaria resolviese vender la referida parcela 'G', dará preferencia a la Autoridad para la adquisición de la misma, por el precio de Un Dólar Sesenta y Cinco Centavos ($1.65) el metro cuadrado."

En la sentencia dictada por el tribunal recurrido se indica que las restricciones y limitaciones convenidas en cuanto a esta parcela de 500 metros cuadrados "la gravaron en forma tal que a menos que la A.F.F. renunciara expresamente a los derechos que sobre ella había adquirido *mediante el pago de una consideración*, hizo que su valor en el mercado quedara estático, fijo. El incremento que en valor adquirían todos los terrenos adyacentes y similares a dicha parcela, que no estaban restringidos por gravamen alguno, no lo recibía la parcela ahora expropiada," e insistió en que en la valoración original de $5,500 no se consideraron las restricciones, limitaciones y gravámenes a que se ha hecho referencia, "y que modifican la parcela." Resolvió, por tanto, que el valor en el mercado de la parcela de 500 metros cuadrados era a razón de $1.65 por metro cuadrado, o sea, $825, y que el de la otra parcela de 26.63 metros cuadrados era a razón de $20 el metro, o sea, $532.60.

La parte recurrente señala que el tribunal de instancia erró al admitir en evidencia la copia certificada de la escritura Núm. 26 antes mencionada sin alegación que sostuviera su admisión y al aplicar sus términos a la parcela expropiada que es distinta a la que se describe en dicha es-

critura. De la relación de los hechos que hemos reseñado en esta opinión surge que oportunamente se permitió una enmienda a la demanda para alegar la reducción en la compensación consignada al incoarse la acción y que respondía al propósito de conformarla con la posición asumida por el Estado sobre la virtualidad y eficacia del convenio aludido, al cual se hizo expresa referencia en la discusión ocurrida durante la vista celebrada el día 14 de diciembre de 1959. Es cierto que la enmienda no se formuló por escrito, [3] pero el hecho mismo de que la demandada presentara una contestación a la demanda enmendada indica que estaba advertida en todo tiempo del significado claro de la resolución del tribunal a quo permitiendo la enmienda. Apuntamos de paso que la Regla 58.6 de las de Procedimiento Civil de 1958, 32 L.P.R.A. (Supl. 1961), pág. 185, autoriza a la parte demandante en un procedimiento de expropiación forzosa a enmendar la demanda en cualquier momento antes de la vista de la cuestión de compensación y cuantas veces quiera. [4] Dispone además que no será necesario que la parte demandante notifique una copia de la enmienda, bastando con que meramente notifique a la parte contraria sobre el hecho de la presentación de la misma. Cfr. *United States v. Certain interests in property in Cascada County*, 163 F. Supp. 518 (Mont. 1958). En cuanto al segundo aspecto de este primer error señalado, tampoco podemos convenir con la recurrente sobre la falta de identidad de la parcela

---

[3] En el exhibit "A" que se acompañó a la demanda que contiene una descripción de la parcela objeto del recurso, la identidad de las personas con interés en el procedimiento y el importe de la compensación, aparece una nota en tinta que lee "$868.93" sobre lo mecanografiado $5,500. Aunque no está inicialada ni por el juez ni por las partes, podría inferirse que esa nota constituye la enmienda.

[4] En el procedimiento federal la regla correspondiente —Regla 71A— dispone que no será necesario obtener el permiso del tribunal para enmendar las alegaciones. Esta frase se eliminó en la regla local. Sobre el particular, véanse, Moore's *Federal Practice* (2a. ed.) Vol. 7, págs. 2784-2786; Barron y Holtzoff, *Federal Practice and Procedure*, Vol. 3 sec. 1523, pág. 563.

expropiada y de aquélla a que se refiere el convenio contenido en la escritura tantas veces mencionada. Una simple ojeada del plano que se unió a la demanda y del que se hizo formar parte de la escritura demuestra que la parcela de 500 metros cuadrados está incluida *totalmente* en la expropiada, y que solamente se le ha agrupado una pequeña parcela de 26.53 metros cuadrados que colinda con ella. Así lo admitió expresamente el abogado de la demandada cuando manifestó que "[l]a parcela G está incluida en lo que se expropia" (T.E., pág. 6).

El segundo error se dirige a impugnar la conclusión del tribunal de instancia determinando que la valoración de la parcela de 500 metros cuadrados se rige por el convenio concertado por las partes en 1948, independientemente del hecho de que se acepta que su valor en el mercado a la fecha de la incautación, en ausencia de dicho convenio, era a razón de $20 el metro cuadrado. Arguye la recurrente que se trata de una simple promesa de venta, de un "convenio de preferencia" sujeto a la condición específica de que la promitente decida vender la parcela a la cual la misma se refiere y que sus términos no pueden aprovechar al Estado Libre Asociado de Puerto Rico que figura como parte demandante y es una entidad distinta a la Autoridad de las Fuentes Fluviales a cuyo favor se otorgó la promesa.

En efecto, el convenio concertado entre las partes otorgantes de la escritura Núm. 26 puede calificarse como una promesa de venta, Art. 1340 del Código Civil, ed. 1930, 31 L.P.R.A. séc. 3747; *Rullán* v. *Registrador*, 67 D.P.R. 702 (1947),[5] unilateral, *Collazo* v. *Conesa*, 70 D.P.R. 155 (1949),[6] cfr. *Rossy* v. *Tribunal Superior*, 80 D.P.R. 729

---

[5] "Es convenido... que en todo tiempo en que doña Esperanza Rullán resuelva vender la parcela objeto de esta compraventa estará obligada a ofrecérsela en venta a las vendedoras, por igual precio al que paga por la misma."

[6] "...mientras esté en vigor el presente contrato de arrendamiento, los arrendatarios tendrán derecho a adquirir las propiedades arrendadas por un valor de ocho mil quinientos dólares . . . En caso de que los

(1958) ; *Caballero* v. *Hogan*, 73 D.P.R. 667 (1952) ; véase, además, *García* v. *De Jesús*, 79 D.P.R. 147 (1956). De Casso y Cervera([7]) indican que este contrato preparatorio debe reunir los requisitos comunes a todo contrato —capacidad, objeto y forma externa— y además los especiales relativos a la determinación del contenido del contrato principal y el término o plazo en que se ha de celebrar éste. En cuanto al objeto, que "es la ulterior conclusión del contrato definitivo que no se quiere o no se puede celebrar por el momento," añaden que el objeto del contrato definitivo debe ser "posible, *lícito* y determinado o determinable."([8]) Es precisamente la ilicitud del objeto del contrato definitivo lo que impide que se le reconozca virtualidad al convenio mencionado, ilicitud que arranca del hecho de ser contrario a las disposiciones del Art. 24 de la Ley de Planificación, Ley Núm. 213 de 12 de mayo de 1942, según enmendada, 23 L.P.R.A. sec. 25, pues recae sobre una parcela de terreno de la cual la promitente o vendedora no podía disponer a la fecha en que se concertó el acuerdo por formar parte de una finca de mayor cabida y no haberse previamente autorizado su segregación por la agencia mencionada.([9]) En cuanto a un con-

arrendadores tuvieren el propósito de vender las propiedades arrendadas a otra persona por una suma mayor de ocho mil quinientos dólares... deberán notificar previamente por escrito... a los arrendatarios, la oferta que se les hiciere, viniendo obligados los arrendatarios a decidir si compran o no las propiedades arrendadas... en el término de treinta días..."

([7]) *Diccionario de Derecho Privado*, Editorial Labor (1954), pág. 3146.

([8]) Para una interesante discusión sobre la diferencia existente entre el contrato de promesa de venta y el de opción, véase, Mézquita, *El pacto de opción y el derecho que origina*, Revista Crítica de Derecho Inmobiliario (1951), tomo 24, pág. 164 y ss.

([9]) En efecto, no fue hasta el día 5 de febrero de 1958 que la Junta de Planificación aprobó el proyecto de la Autoridad para la adquisición de una parcela de 500.10 metros cuadrados, y, específicamente su segregación, con dispensa del cumplimiento de las disposiciones del Reglamento de Lotificación y de la presentación de un plano de inscripción.

Esta resolución fue posteriormente enmendada por la de 4 de junio de 1958 que autorizó la adquisición de una parcela de 526.63 metros cuadrados, que incluye la de 500.10 metros cuadrados.

trato de compraventa, así lo resolvimos en *Soto* v. *Feliciano*, 80 D.P.R. 615 (1958), en donde indicamos, copiando del sumario, que "es *radicalmente nula* una compraventa celebrada en violación de una prohibición legal fundada sobre motivos de orden público —compraventa de solar segregado sin que para la segregación se obtuviera la previa autorización de la Junta de Planificación— así como los traspasos posteriores que de ese solar se hagan."

▮ Por otro lado, no podemos convenir con la sala sentenciadora en que la concertación del acuerdo en 1948 tuvo el efecto de congelar indefinidamente el valor en el mercado de la parcela de 500 metros cuadrados, aun para fines de expropiación. Admitimos que no tiene méritos la proposición sostenida por la recurrente al pretender distinguir entre el poder expropiante y la autoridad beneficiaria del convenio, pues, como hemos señalado anteriormente, el procedimiento para la adquisición se interpuso bajo las disposiciones de ley que permiten a la Autoridad de Fuentes Fluviales el ejercicio del poder de expropiación forzosa, el fin de la adquisición es para único beneficio de las actividades de ésta, y aun la misma demandada reconoció que dicha agencia era la "verdadera parte demandante." Sin embargo, los propios términos del convenio frustran su aplicación al caso de expropiación, pues no se trata de una venta voluntaria, sino de una incautación forzosa de la propiedad que la propietaria no puede resistir aunque no sea su intención desposeerse del inmueble. De ser válido el convenio no entraría en juego en el presente procedimiento, pues el ejercicio del beneficio o preferencia concedido a la Autoridad está claramente sujeto a que "la propietaria resolviese vender." Tampoco admitimos la interpretación del tribunal a quo que vincula el negocio principal acordado en virtud de la escritura Núm. 26 —la venta por la señora de la Torre de tres parcelas a la Autoridad por $36,663.15— con otros convenios, incluyendo el que se pretende aplicar en este

pleito, que se consignaron en la misma. En realidad se trata de transacciones distintas, cuyo único vínculo es que intervienen las mismas partes y se figuran en el mismo documento público. Una lectura de la escritura revela que la venta no se hace depender ni en todo ni en parte de los otros convenios; no hay referencia alguna a que la causa del contrato de compraventa fuera otra, en adición al pago de los $36,663.15. Es más, se figuró una "consideración" separada, como la denominan las partes, para la constitución de la servidumbre aérea. Cfr. *Ramírez Ortiz v. Gautier Benitez*, 87 D.P.R. 497 (1963).

Cometió error el tribunal de instancia al valorar la parcela de 500 metros cuadrados a razón de $1.65 el metro cuadrado. Habiéndose estipulado que su valor en el mercado a la fecha de la incautación era de $20.00 por metro cuadrado, *se dictará sentencia de conformidad, o sea, se fijará su valor a los fines de la compensación justa y razonable en la suma de $10,000. Como la recurrente disfrutó de la suma de $5,500 consignada originalmente hasta el 19 de febrero de 1960, en que la reintegró en cumplimiento de la resolución de fecha 15 de diciembre de 1959, los intereses que la parte demandante viene obligada a satisfacer conforme a la Sec. (5) de la Ley de Expropiación Forzosa, según enmendada, 32 L.P.R.A. sec. 2908; Pueblo v. Soc. Agríc. Mario Mercado e Hijos, 72 D.P.R. 792 (1951); Autoridad sobre Hogares v. Sagastivelza, 72 D.P.R. 276 (1951); se computarán como sigue: Sobre $4,500, desde la fecha de la incautación hasta su pago; y, sobre $4,631.07, desde el 19 de febrero de 1960 hasta el pago total.*