Arbona Lago, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Corresponde atender respecto al método de disolución y liquidación judicial de una comunidad. Cosa y participación conocida, código y doctrina ofrecen al tribunal tres caminos: 1) la división física "in natura", 2) la adjudicación de la cosa a un comunero con pago del justiprecio a los demás y 3) la *1473 venta en pública subasta y distribución del producto en dinero. En tal caso la ley no acepta como norma la voluntad de la mayoría, siendo requisito que el tribunal falle al igual que en todo otro litigio, conforme a la equidad’y la conveniencia general, lo que equivale decir a la justicia del caso. Aunque de mediar venta a un tercero, ello ha de ser siempre mediante pública subasta, es posible que el remedio idóneo entre comuneros sea una de las otras dos alternativas.
Trata esta causa sobre división de una comunidad de bienes, en la que Cupey High View Tower, Inc. y el Sr. Abimael Hernández González, en lo sucesivo "Cupey High", y la sociedad de gananciales compuesta por el Sr. Adolfo Fortier y Sra. Matilde Díaz de Fortier, en lo sucesivo "Fortier", son dueños de por mitad de la finta-urbana que a continuación se describe. Dicho inmueble, aunque denominado rústico, ya está en zona urbana y colinda con la Urbanización Extensión Sagrado Corazón y Urbanización El Vigía, todas del barrio Cupey, de San Juan:

"RUSTICA: Parcela de terreno en el barrio Cupey Bajo del término municipal de Río Piedras, Puerto Rico, de DOS (2) CUERDAS de cabida, igual a setenta y ocho (78) áreas, sesenta (60) centiáreas, y sesenta y ocho (68) miliáreas, en lindes por el Norte con la Sucesión de Don Ezequiel Mongil y Cristina Rosa; por el-Este, con dicha Sucesión Mongil; por el Oeste, con Don José Martínez Llonín, separada por una quebrada; y por el Sur, con Don Agustín Dávila:

"Inscrita alfolio ciento treinta y tres (133) del tomo ciento ochenta y dos (182) de Río Piedras Sur, finca número seis mil ciento nueve (6,109), inscripción séptima."

Los litigantes adquirieron el inmueble antes del año 1964, para el 1990 por lo menos Fortier : interesó la terminación de la comunidad, y por no ponerse de acuerdo con Cupey High presentó ' demanda sobre "División de Comunidad y Daños y Perjuicios" el 30 de agosto de 1990 ante el Tribunal Superior, Sala de San Juan. Alegó que (1) la finca es materialmente divisible y el 50% de Cupey High está sujeto a hipoteca por $225,000 en garantía de pagaré al portador; 2) Cupey High ; tenía a su cargo el pago de las contribuciones territoriales, "...debiendo requerirle al señor Portier el reembolso o la aportación de la porción correspondiente a su participación proindivisa", (alegación 8va ) "... y para su gran sorpresa, la parte demandante se ha enterado que el Departamento de Hacienda reclama que la propiedad adeuda contribuciones por la suma de $12,760, la que comprende principal y algunas penalidades, intereses y recargos"; y en Demanda Suplementaria 1 suscrita el 14 de noviembre de 1994 se añade la tercera causa de acción, reclamando abono de daños por entorpecimiento del trámite judicial e "imputaciones difamatorias", por los que alegan haber sufrido daños mentales y morales resarcibles en una suma no menor de $100,000.
El 1 de febrero de 1991 Instancia dictó Sentencia Sumaria Parcial en cuanto a la acción de división de comunidad, ("communi dividundo") adjudicando de la siguiente forma:
"En consideración a todo lo antes expuesto y no existiendo controversia de hechos respecto al carácter, comunitario y divisible de la propiedad inmueble que se describe en esta sentencia; existiendo al presente una comunidad de bienes entre los demandantes y la co-demandada Cupey High View Towers, Inc., el Tribunal ordena la división del bien inmueble a que se refiere esta sentencia por partes proporcionales al derecho de cada uno. Se le imponen a los demandados las costas del pleito sin especial imposición de honorarios de abogado. El Tribunal concluye que no existe razón para posponer el dictar sentencia sobre esta reclamación hasta la resolución total del pleito por lo que se ordena en forma expresa que se registre esta sentencia sumaria parcial." (Enfasis suplido)
Ante mociones post sentencia de Cupey High, el Hon. Tribunal de Instancia, enmendó su dictamen mediante Resolución de 30 de mayo de 1991 y entonces dispuso por Resolución:
"Considerada la posición de todas las partes, el Tribunal determina que a tenor con la prueba presentada por la parte demandada la propiedad es materialmente divisible según consignamos en la sentencia dictada. No obstante lo anterior, económicamente la división material resultaría en un menoscabo para los comuneros ya que el mejor uso para el sujeto es el desarrollo integral en un sólo proyecto. Por todo lo anterior, se le ordena a las partes que dentro del término de 10 días informen al Tribunal un perito tasador por mutuo acuerdo o presenten cada uno su candidato. Designado el *1474 tasador y rendido su informe en el plazo de 20 días a ser contados a partir de su nombramiento, el Tribunal ordenará la venta en pública subasta de la propiedad usando como precio mínimo la tasación realizada". (Enfasis suplido)

REGISTRESE YNOTIFIQUESE

DADA en San Juan, Puerto Rico, a 30 de mayo de 1991."

De tal forma, Instancia primero ordena la disolución por la vía de la división "in natura" y luego enmienda para hacerlo vía pública subasta. Luego, mediante orden del 20 de mayo de 1992 se autorizó la celebración de la pública subasta del inmueble por precio mínimo de $277,315. La primera subasta fue suspendida, la segunda quedó desierta y las demás pautadas quedaron interrumpidas por procedimientos de Quiebra (Capítulo 11) instado por Cupey High. Estando pendiente el trámite en el Tribunal Federal de Quiebras, Fortier acudió ante la Junta de Planificación, en la causa para solicitar permiso, lotificación del inmueble comunitario, a lo cual Cupey High objetó y la Junta desestimó por incumplimiento con la sección 3.01 de su reglamento, que para tal trámite requiere autorización de todos los condueños.
El 11 de octubre de 1994, desestimado ya el trámite de Quiebras y previa vista, Instancia concedió 15 días a las partes para escoger un ingeniero que estaría a cargo de la "confección de planos y permisos" para llevar a cabo la segregación de la propiedad en dos lotes " Al así actuar Instancia regresó a su dictamen original del 1 de febrero de 1991 y dejó sin efecto la enmienda del 20 de mayo de 1992.
A tal respecto Instancia se pronunció de la siguiente forma:

"Luego de escuchar los argumentos legales expuestos por las partes, el Tribunal ordena la división material de la propiedad en comunidad. Los fundamentos para nuestra decisión son los siguientes:

Aunque nuestra sentencia parcial a esta fecha es final y firme ya que le dimos finalidad a la misma a tenor con la Regla 43.5 de Procedimiento Civil, no hemos perdido jurisdicción en cuanto el remedio a conceder para llevar a cabo la división de la comunidad, aunque hayan transcurrido los seis meses de la Regla 49.2 de las de Procedimiento Civil. Esto es así ya que la sentencia parcial solamente ordena la división de la comunidad. Nuestra resolución de 31 de mayo de 1991 es la que ordena la venta total del inmueble en pública subasta para evitar el menoscabo de los comuneros. La resolución dictada no tiene el lenguaje de la Regla 43.5 supra." (Enfasis suplido).
Cupey High no actuó. Fortier propuso como perito al agrimensor Sr. Luis Sousa Gallardo, para confección de planos y obtención de permisos para lotificar la finca objeto de este litigio en dos porciones, lo que fue acogido por el tribunal en su resolución del 5 de diciembre de 1994, la cual también dispuso en su párrafo final:

"Igualmente se autoriza a dicho perito que ajuste las participaciones de 50% del valor del predio que corresponden a cada comunero, para descontar de la de Cupey High View Towers, Inc. e incremente la de la Sociedad Legal de Gananciales Forter Díaz por el valor del 50% de la totalidad de los honorarios del perito, los cuales pagarán en su totalidad los demandantes."

Surge de la minuta del 8 de diciembre de 1995, en Instancia, que en sesión de sala el Tribunal aceptó la lotificación encomendada al agrimensor Sousa Gallardo y procedió al sorteo de la siguiente forma:

"Luego del Tribunal oír al perito en corte abierta y en presencia de los abogados y funcionarios del Tribunal se procedió al sorteo de los lotes entre los dos comuneros."

Concluido el sorteo el cual fue llevado a cabo por el Sr. Alguacil se hace constar que el Lote A-l y A-2 le corresponden al Sr. Fortier y los Lotes B-l y B-2 le corresponden al Sr. Hernández.

*1475
El Tribunal, hace constar que este proceso es sujeto a que la Administración de Reglamentos y Permisos (ARPE) apruebe la lotificación según presentada."

De tal trámite recurre ante nos Cupey High, mediante certiorari. El 22 de enero de 1996 expedimos vía trámite para mostrar causa, a la que ambas partes han replicado. Estando en condición de resolver a continuación exponemos.
Consta en autos copia de plano del inmueble en litigio junto a detalles topográficos y de acceso. Aunque en la esquina noroeste toca en breves metros con calle de la Urb. Extensión Sagrado Corazón, el mejor acceso del predio-en disputa se encuentra en su lado noreste, donde colinda en 13 metros con la calle Anastacia, dé la Urb. El Vigía. De norte a sur la superficie declina 20 metros, lo que proyectado sobre 2 cuerdas de terreno implica una topografía escarpada. No consta de autos las delimitaciones físicas de las "parcelas" A-l y A-2 ni., las B-l y B-2, por lo que no conocemos como la suerte favorece a cada comunero en esta lucha por la disolución de la comunidad.
II
En diferentes etapas del litigio ante Instancia, las partes reclaman la protección de "cosa juzgada" en cuanto a la manera de liquidar la comunidad: por subasta o por división en lotes. Entendemos estéril tal exégesis, independientemente de que la sentencia parcial de 1 de febrero de 1991 se limite a reconocer la comunidad y a ordenar su división equitativa, o que se entienda que dispuso respecto a la división física de la finca en lotes, lo que luego fue variado mediante la "Resolución" del 30 de mayo de 1991. No hay ni puede haber litigio entre las partes respecto a la existencia de la comunidad, la participación del 50% de cada comunero, el gravamen hipotecario correspondiente al 50% de Cupey High y al hecho de que no existe pacto para su continuidad por término específico ni en cuanto a como lograr la disolución en su día. Con relación a este aspecto del litigio sólo queda pendiente el método de liquidación. 
Fortier favorece la división física en lotes y "Cupey High" interesa la venta en pública subasta como una sola finca. Si quedare alguna duda respecto a que la contienda sobre la disolución de la comunidad está en plena vigencia en su aspecto sustantivo de método de liquidación, basta añadir que las propias actuaciones de las partes ante el foro de Instancia así lo demuestran y que por demasiado tiempo (5 1/2 años) y a pesar de todos los esfuerzos desplegados por el ilustrado foro de Instancia, la causa reta una solución satisfactoria y final. Sabido es que ninguna causa tiene derecho a vida eterna en los tribunales. Véase Heftler Construction v. Tribunal Superior, 103 D.P.R. 844, 847 (1974), Dávila Mundo v. Hospital San Miguel, 117 D.P.R. 807 (1980).
III
Toca resolver respecto al método de disolución y liquidación de la comunidad ya conocida en cuanto a cosa y participaciones. El Código y la doctrina ofrecen tres caminos, la división física de la finca ("in natura"), la adjudicación a una parte con pago del justiprecio a la otra o la venta en pública subasta de la finca y posterior repartición del producto en dinero. Precisamente, cada litigante acoge una distinta de tales tres alternativas, obligando al foro judicial a tomar la determinación que encuentre más favorable a los intereses en conflicto.
Instancia finalmente optó por la división física o "in natura", y con tal propósito el 5 de diciembre de 1994 comisionó al agrimensor, Sr. Luis Sousa Gallardo, como queda dicho. 
Así las cosas, el Tribunal sorteó los 4 lotes según señalado, luego la Junta de Planificación rechazó la solicitud de segregación por incumplimiento con requisitos reglamentarios y el asunto se encuentra ahora en igual proindiviso que en agosto de 1990.
Para poder dividir físicamente la finca urbana que nos ocupa, mediante sentencia firme y ejecutable, es menester que las subdivisiones, o lotes, existan previamente como cuestión de hecho y derecho. Resulta ser un dictamen judicial no ejecutable aquel que esté predicado en una futura e incierta segregación, que no queda al alcance del Tribunal resolver.
No se trata aquí de un negocio jurídico privado, que los propios contratantes optan por sujetarlo a una condición suspensiva, como se autoriza en el Art. 22 de la Ley Núm. 76, pág. 233, de julio 1, 1975, 23 L.P.R.A. 71u y en Meléndez v. Jiménez Realty, Inc., 98 D.P.R. 982. 
*1476 Un pronunciamiento judicial que se interese alcance el grado de sentencia final y firme, por tanto ejecutable, no debe ni puede arriesgar el calificativo de ejercicio académico, quedando supeditado a un trámite no judicial, todavía de incierto resultado. Si las 4 fincas todavía no existen en derecho, como predios individuales ya segregados de la finca a dividir y capaces de constituir cada uno nueva finca, entonces nada sorteó el Sr. Alguacil el 8 de diciembre de 1995 en sala. Tal acto es ineficaz e inconsecuente en derecho.
De igual forma que un dictamen judicial no adviene sentencia final ni firme cuando no cumple con todos los requisitos de ley, tampoco puede proyectarse su ejecución sobre algo que todavía es contingente y sujeto a la condición suspensiva de que "A.R.P.E. apruebe la lotificación según presentada". Contrario a lo que permite la ley en cuanto a contratación, una sentencia no puede sustentarse sobre algo que no constituye "un vínculo de derecho", mucho menos puede así ser objeto de ejecución.
IV

"Hay comunidad cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas.

A falta de contratos o disposiciones especiales, se regirá la comunidad por las prescripciones de las sees. 1271 a 1285 de este título." Código Civil, 1930, art. 326, 31 L.P.R.A. 1271.

"Ningún co-propietario está obligado a permanecer en la comunidad. Cada uno de ellos podrá pedir en cualquier tiempo que se divida la cosa común.

Esto no obstante, será válido el pacto de conservar la cosa indivisa por tiempo determinado, que no exceda de diez años. Este plazo podrá prorrogarse por nueva convención." Código Civil, 1930, art. 334, 31 L.P.R.A. 1279.
"Serán aplicables a la división entre los partícipes en la comunidad, las reglas concernientes a la división de la herencia." Código Civil, 1930, art. 340, 31 L.P.R.A. 1285.
Esta causa no presenta, como hemos ya dicho, dificultad alguna en cuanto a los primeros dos preceptos de ley. No obstante, nos corresponde dirigirnos al tercero. No hemos encontrado un sólo caso en nuestra jurisprudencia que atienda directamente el asunto de liquidación de comunidad vía la división física y de sorteo judicial. No obstante, en Passalacqua v. Passalacqua, 87 D.P.R. 587 (1963), pág. 594, el Tribunal Supremo recomendó los artículos de José María Reyes Monterreal, El Proceso de Disolución de la Comunidad, publicado en la Revista de Derecho Procesal, número 1 (1960), Madrid, págs. 395-437 y de Manuel Maynar Barnonals, Proceso de División de la Cosa Común, publicado en la Revista General de Legislación y Jurisprudencia, número 196 de la colección (1954), Madrid, págs. 312-327. Tales trabajos arrojan luz sobre este complejo aspecto de nuestro Código Civil, ante lo cual varían las apreciaciones de los exégetas del derecho. Entendemos y resolvemos que el Artículo 304 C.c., supra, se refiere a la división de una herencia (y por tanto a una comunidad también) en tanto y en cuanto ello se tramite amistosamente y sin litigio. Ello es así por razón de que aún en la partición de la herencia es necesario atenerse al juicio ordinario cuando no hay común acuerdo de los interesados. En tales casos la ley no acepta la voluntad de la mayoría, siendo necesario que el tribunal falle conforme al derecho, la equidad y la conveniencia general.
"Y, dejando bien sentado que esas normas del Código y de la Ley sólo están establecidas para los casos de conformidad de los interesados en la comunidad o en la herencia, pasamos a sentar como base de nuestra posición la de que, en los supuestos de desavenencia entre los interesados en la comunidad, la disolución de ésta se efectuará ejecutando la sentencia que haya recaído en el proceso ordinario que, por cuantía, corresponda, puesto que en ella ha de resolverse la procedencia de dividir o no el objeto de esa cotitularidad, su adjudicación o su venta en pública subasta, pero la disolución en todo caso y en todo caso también con efectividad práctica en vía de ejecución de sentencia". El Proceso de la Disolución de la Comunidad, José María Reyes Monterreal, Revista, Madrid, págs. 399-400. (Enfasis suplido)
*1477 En la causa que nos ocupa tanto el Hon. Tribunal de Instancia como litigantes coinciden con tal visión. Primero el Tribunal optó por la pública subasta, para liquidar en dinero, luego por dividir físicamente el objeto mismo de la cotitularidad. No se consideró la tercera posibilidad, la de adjudicar a uno el inmueble y compensar en dinero, según valor en el mercado al otro comunero.
Independientemente de que se trate de una disolución de comunidad por la vía judicial ordinaria que implica la ejecución de una sentencia o conforme a las normas sobre partición de herencia, que requieren de anuencia de las partes y en algunos casos también de la intervención del foro judicial dentro de su jurisdicción "ex parte" o voluntaria; lo cierto es que en ambos trámites ello sólo tiene efectos distributivos entre y ante tales comuneros, no tratándose de un acto de enajenación propiamente. Se trata de "[l]a transformación de lo abstracto en concreto, confiriendo a cada partícipe la propiedad exclusiva de los bienes que le hayan sido adjudicados". Díaz v. Registrador, supra, págs. 239-240.
Aún y cuando los interesados comuneros, directamente o el Tribunal por ellos en defecto de un acuerdo, pueden lograr la disolución mediante cualesquiera de los tres métodos señalados, todos tendrán también que atenerse a cualesquiera otros preceptos de ley que incidan en el trámite escogido, por ellos o por el Tribunal.
Se trata aquí de una finca en zona urbana; la división física, en dos o cuatro predios, requiere de permisos de lotificación ante A.R.P.E. Ello, a su vez, requiere de la construcción o afianzamiento de acceso asfaltado, vía pública, aceras, tuberías de acueducto, alcantarillado, tendido eléctrico, etc., lo que a fecha de la división distributiva "in natura" del 8 de noviembre de 1995 no se había logrado. Ello se conocía y por ello la sentencia condicionó el trámite a la posterior obtención de tales permisos,
Entendemos que una sentencia, por definición, tiene inmerso el elemento de finalidad que aquí falta. La ejecución de un dictamen tal, también requiere que a tal fecha ello sea final y firme, lo que equivale a total certeza jurídica. Por otro lado, una sentencia que interese concluir y extinguir una comunidad, no puede desembocar, aunque sea parcialmente, en otra comunidad, aunque la subsiguiente sólo sea sobre parte del predio de la primera. La situación se agrava cuando en la comunidad que nace se requiera de considerable obra y costos de construcción, a efectuarse en conjunto por los comuneros distanciados entre sí.
Las partes están acordes a la disolución de la comunidad, pero muy discordes en cuanto a su forma.
Antes de que Instancia pueda optar por una de las tres fórmulas, ha primero de encontrar cual es la más justa y apropiada ante todos los intereses en litigio, tomando para tal determinación en cuenta la justicia sustancial del caso y cualquier norma de ley que tangencialmente pueda intervenir en cualquier solución contemplada.
La sentencia del 1 de febrero de 1991, enmendada por la Resolución del 30 de mayo de 1991 el Tribunal "a quo" concluyó que "... la división material resultaría en un menoscabo para los comuneros ya que el mejor uso para el sujeto es el desarrollo integral en un sólo proyecto" y por ello ordenó la venta en subasta pública.
Entendemos que debido a los inconvenientes procesales señalados, Instancia luego consideró que la situación requería la división "in natura", cuando procedió a la lotificación condicionada (que implicó algún tipo de tasación de valor pericial por un agrimensor) y el sorteo de 8 de diciembre de 1995 en corte abierta. Del expediente no consta el por qué se descartó su mejor uso como predio íntegro.
Atendidos los impedimentos del segundo trámite (división y sorteo), actualmente en autos no se justifica curso divisorio y distributivo que no sea la venta en pública subasta de la totalidad del inmueble en comunidad y la liquidación del producto entre los comuneros, según corresponda. La disposición del 11 de octubre de 1994 que concedió 15 días a las partes para escoger al ingeniero que estaría a cargo de la "confección de planos y permisos para llevar a cabo la segregación de la propiedad en dos lotes..." está predicada en un concierto de voluntades inexistente entre partes y por tanto inoperante. 
*1478 Para cambiar el curso decisorio de la ley del caso que nos ocupa en esta causa y que data del 30 de mayo de 1991, lo que todavía no constituye cosa juzgada, como hemos ya señalado, Instancia tendría que: 1) recibir prueba pericial suficiente para adjudicar por sentencia cuál es el valor en el mercado del predio en litigio, si se estima apropiado la adjudicación a un comunero con ajuste en dinero al otro, o 2) tomar en custodia le gis, el inmueble, nombrar un comisionado al amparo de la Regla 41 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill R. 41, para que éste contrate peritos idóneos, que a su vez soliciten y obtengan de todas las agencias estaduales y municipales pertinentes los endosos y permisos que la lotificación urbana conlleva. Ello implica sustancial erogación en gastos periciales y de construcción, independientemente que se afianze previamente; así como el traspaso de vías y servidumbres de servicios públicos a las entidades correspondientes del Estado, para que no exista más comunidad que las fincas nuevas. Hecho esto, luego de tasación pericial de total equivalencia, conforme a los hechos que informan la causa, se podrá adjudicar por sorteo entre comuneros.
Conforme a lo expuesto se dispone de la siguiente forma:

"1) Se deja sin efecto todo el trámite ante Instancia predicado en división ("in natura") hasta que parte interesada establezca ante el Tribunal y se adjudique por sentencia primero lo que deba disponer el fallo judicial en los méritos de la causa. Previo a tal dictamen se han de'considerar todos sus costos en efectivo y metros de terreno, se han de establecer las obras necesarias o los afianzamientos que permitan la expedición de todos los permisos necesarios para que el Registro de la Propiedad concernido pueda considerar registrar tales lotificaciones urbanas como fincas independientes, antes de que el Tribunal pueda recurrir al sorteo final de tales fincas de menor cabida. Este curso disolutorio de la comunidad no puede dejar proindiviso alguno entre los comuneros de parte alguna de la finca original, ni tampoco convertir a tales litigantes en socios de construcción.

2) En caso de que parte interesada promueva al Tribunal y establezca que una de las otras dos alternativas (adjudicación y compensación económica o subasta pública y liquidación en dinero) es la apropiada, se procederá a determinar por medio pericial, preferiblemente perito único designado por el Tribunal, el justiprecio del terreno en el mercado o el precio mínimo de subasta, según sea el caso. Para el trámite de subasta se puede luego modificar, de igual forma, el precio mínimo en caso de quedar desierta una o más veces, hasta que el mercado se manifieste y subaste el inmueble."

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Sonia Pacheco Román
Secretaria General
ESCOLIOS 96DTA40
1. Se trata de una inadvertencia. Se confunde disolución con división. La sentencia sumaria parcial del 1 de febrero de 1991 no sólo dispuso la disolución, sino que también dispuso en cuanto al método de división "in natura". De lo contrario no sería sentencia, faltándole el elemento de finalidad dispositiva, Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20 (1986) y sería una mera Resolución, como la que sólo resuelve el aspecto de negligencia en una causa de daños, Díaz v. Navieras de P.R., 118 D.P.R. 297 (1987). Como ya hemos señalado, esta sentencia fue enmendada por la sentencia enmendada del 30 de mayo de 1991 que equivocadamente se tituló "Resolución", pero varió la parte dispositiva del dictamen. Véase Torres Torres v. Tribunal Superior, 101 D.P.R. 277, (1973), pág. 278. Véase también nota al calce núm. 4.
2. "Réplica a Solicitud de Orden de División de Propiedad y Otros Extremos", de Cupey High ante Instancia de 29 de julio de 1994.
3. "Comparecencia en Cumplimiento de Resolución y Solicitud de Desestimación", de Fortier en Certiorari, 20 de febrero de 1996.
4. Desde su origen el litigio comprendía dos causas distintas de acciones judiciales. Adjudicada totalmente la *1479 primera y cumplido con el requisito de la Regla 43.5 de Procedimiento Civil (32 L.P.R.A. App. Ill R-43.5) inició su finalidad. La sentencia de 1 de febrero de 1981; véase Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20 (1986), Díaz v. Navieras de P.R., 118 D.P.R. 297 (1987), First Federal Savings Bank v. Nazario, 95 J.T.S. 101, 140 D.P.R._(1995). El lenguaje de la parte dispositiva, distinguible de fundamentos de hecho y derecho, (véase Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642 (1987) de la sentencia del 1 de febrero de 1991 quedó alterado mediante la "Resolución" del 30 de mayo de 1991. Aunque este último dictamen no se tituló Sentencia, ese es también su efecto, al variar parte de la disposición de la anterior en cuanto a la forma y manera de liquidar la comunidad disuelta. Véase Torres v. Tribunal Superior, 101 D.P.R. 277 (1973). Antes se consideró divisible físicamente el predio, luego no conveniente y por ello se dispuso la venta en pública subasta. En una acción de esta naturaleza la forma y manera de la liquidación es tan esencial como su previa disolución. La primera no debe desembocar en otra comunidad, total o parcial.
No habiéndose dado cumplimiento a la Regla 43.5 de Procedimiento Civil, supra, en cuanto a la sentencia enmendada, según dispuesto por la "Resolución" del 30 de mayo de 1991, y asentida por las partes, el asunto no ha adquirido finalidad de cosa juzgada a esta fecha. Véase Núñez v. Jiménez Miranda, 122 D.P.R. 134 (1988). Por ello actuó correctamente Instancia cuando en 11 de octubre de 1994 vuelve a enmendar el mandato decisorio "... la porción o parte dispositiva... que constituye la sentencia...", Cárdenas Maxán v. Rodríguez, supra, pág. 656, y dispuso volver a la partición física". Debido a que la sentencia parcial que estamos revisando aún no es final, no carecemos de jurisdicción". Núñez González v. Jiménez Miranda, supra, pág. 138.
5. Aunque con tal dictamen se le comisionó también como Perito Tasador y se le autorizó a descontar a Cupey High el 50% de sus honorarios, debido a complejidades de trámite el perito no descontó el 50% de sus honorarios a Cupey High, lo que también implicaría asignarle a Cupey High un lote específico. A tal efecto Fortier informó al Tribunal de Instancia, el 26 de octubre de 1995 en moción titulada "MOCION NOTIFICANDO PLANO DE LOTIFICACION Y SOLICITUD DE SORTEO DE LOTES":

"4. Aunque el Honorable Tribunal había autorizado que se le satisficiera a los demandantes los costos que ellos han desembolsado para tramitar la lotificación mediante la entrega a ellos de terreno adicional que los compensara, ello no ha sido práctico debido a las dificultades técnicas atribuibles a las diferencias en el valor de los terrenos de distinta topografía. Este factor ha sido el que ha requerido la lotificación de cuatro lotes en lugar de dos.

6. "Lo pactado evidentemente no es una compraventa perfecta. No es una compraventa perfecta porque le falta el elemento real necesario para la perfección del contrato al no constituir tal cosa objeto lícito de contrato. Véanse Emanuelli v. Cadierno, 50 D.P.R. 134 (1936) y E.L.A. v. De la torre, 87 D.P.R. 800 (1963). Está sujeto a una condición suspensiva: que la Junta de Planificación apruebe las segregaciones. Si no las aprueba no surge a la vida del derecho el conrato. Es un contrato de compraventa con una condición suspensiva. Como expresa Puig Brutau, en Fundamentos de Derecho Civil, Tomo I, Vol. II, pág. 127 (ed. 1959), "[ e ]n estafase la obligación está contraída y las partes, por tanto, se hallan vinculadas; pero han de esperar a que desaparezca la incertidumbre y pueda saberse si la prestación efectivamente deberá realizarse o si el deudor quedaría desligado de la obligación. Por tanto, aunque las partes se hallen vinculadas no se sabe si en definitiva la obligación será eficaz..." Y como expresa Manresa en Comentarios al Código Civil Español, Tomo VIH, Vol. 1, pág. 367 (6ta. ed.) "Si la condición suspensiva se cumple, la obligación surge... Si... no se realiza, el vínculo de derecho no llega a aparecer." pág. 897.
7. Véase también segundo párrafo de nota al calce núm. 4, en cuanto a finalidad de dictamen en esta causa.
8. "La división es un acto declarativo sin efectos atributivos, traslativos o dispositivos, sino efectos distributivos." Díaz v. Registrador, 107 D.P.R. 233 (1978) pág. 236.
9. Vienen al punto los comentarios siguientes del artículo "El Proceso de la Disolución de la Comunidad", supra:

"Si, pues, se ha hecho preciso promover la contienda por ausencia de concorde voluntad de las partes para 
*1480
dividir o adjudicar, huelga hablar de que hay que aplicar a la sustanciación de aquélla las normas del proceso de testamentaría, normas de una jurisdicción voluntaria que, procesalmente, implica toda exclusión de oposición. Porque ya vimos cómo estas normas sólo regulan la división en o partición de la herencia cuando en las Juntas de partícipes hay acuerdo, cuando se ha verificado la partición por división en lotes y lo operado por los partidores se aprueba por todos los herederos; no cuando alguno de ellos se opone, puesto que entonces hay que acudir al juicio ordinario que, por cuantía, corresponda.

Al estudiar entonces el proceso de división de la cosa común no hay que decir que hemos tenido que llegar a él por ausencia de un acuerdo de los interesados, y sería absurdo tramitar tal proceso por idénticas normas del juicio de testamentaría, a ciencia y paciencia de que hibamos a llegar a nuevo punto muerto, a un momento en que la voluntad concorte de los interesados nos iba a fallar, porque estaríamos girando en torno a un círculo vicioso.

Cuando se ha iniciado el proceso ya no hay que contar para nada con la voluntad de los litigantes, sino que hay que caminar hasta la obtención de un fallo en que la autoridad judicial, superándola e imponiéndose a los dispares puntos de vista de los contendientes, ha de mandar que se haga la disolución y ésta se ha de hacer en la forma como el Juez ordene, lo quieran o no los propios interesados, a los que ya no queda más arbitrio que instar o no la ejecución del fallo." págs. 411-412.
"Por consiguiente, si, habiendo conformidad de las partes, cualquier forma de disolución es buena —incluso, naturalmente, la que se lleve a efecto por cualquier procedimiento distinto a los previstos en el Código— no existiendo aquella, ha de estar el Juez a la naturaleza divisible o indivisible de la cosa, de una parte (para ordenar se divida por árbitros o amigables componedores), y, de otra, cuando no puede dividirse, a la enajenación de la misma en pública subasta." pág. 435.
10. Trámite que a diario se efectúa en las salas de expropiación forzosa, cumpliendo con garantías de orden constitucional.